ELMCREST REALTY COMPANY, INC. *et al. vs.*
ZONING BOARD OF REVIEW OF THE CITY OF WARWICK.

JULY 27, 1951.

PRESENT: Flynn, C. J., Baker, Condon and O'Connell, JJ.

FLYNN, C. J. This petition for certiorari was brought by an applicant for certain building permits to have this court review a decision of the zoning board of review of the city

of Warwick revoking the permits previously issued by the building inspector. Pursuant to the writ the pertinent records have been certified by the respondent board to this court.

From these records it appears that Elmcrest Realty Company, Inc., hereinafter called the applicant, became the owner of three separate lots described in the deed of purchase by reference to a recorded plat in the city of Warwick. In the tax records of that city and in the applications for the permits in question these lots were designated as Nos. 136, 137 and 138 on plat No. 301 of the tax assessors' plats in that city. They were located in an area classified by the zoning ordinance as a residence B district.

In that zone a single family detached dwelling is a permitted use subject, however, to requirements that each such dwelling be built on a lot having at least an area of 7,000 square feet, a street frontage of 70 feet, and certain front, side and rear yard setbacks as therein prescribed. Section VI of the ordinance. In that zone a detached garage is also permitted in a rear yard within specified distances from lot and street lines, and the size and location thereof as an accessory use is to be determined by the zoning board of review. Section X of the ordinance.

According to the evidence the areas of lots Nos. 136, 137 and 138 are respectively 4,614 square feet, 4,854 square feet and 4,498 square feet. Each of these lots has approximately a 50-foot street frontage and apparently most of the lots in the neighborhood on the recorded plat were substantially similar in area and frontage, and were improved by single family dwellings.

The applicant on February 17, 1950 through an architect filed applications with the building inspector for permits to build a one-family dwelling and garage on each of the above-mentioned lots in accordance with plans submitted therewith. The plans showed the location of the proposed buildings on the lots and the extent of the front, side and rear yards. Acting under his interpretation of an amend-

ment to sec. XII (B) 1, the building inspector issued the permits. That amendment apparently contemplated certain relief to owners of a "lot in separate ownership at the time of the passage of this Ordinance" which lot was large enough for a single family dwelling in a residential neighborhood before the ordinance was enacted but which did not meet the increased requirements under the instant ordinance, namely, 7,000 square feet in area and a street frontage of 70 feet.

Almost immediately after receiving the permits the applicant commenced preparations to build. However, before actual operations had started certain of the owners of property in the immediate neighborhood complained to the building inspector that the applicant was planning to build in violation of the requirements of the zoning law as to area and frontage. Similar complaints were made to that official by other remonstrants at various times and in the earlier stages of the building operations, but the building inspector failed or refused to take action to prevent the applicant from building under his permits. His explanations to remonstrants were in substance that he himself had located the buildings on the plan; that whatever applicant did under these permits and plans was all right; and that he had granted the permits as a "hardship case" under the zoning law.

Recourse was also had by some of the remonstrants to certain other officials of the city in a further effort to prevent the applicant's building under these permits. Meanwhile, however, the applicant was continuing to build and to make substantial expenditures apparently without any complaint being made personally to it by the remonstrants and without interference from any city official. The permits were granted February 17, 1950, and the appeal therefrom was not filed until about May 11, 1950, at which time all three dwellings and two of the garages were substantially completed, at least on the outside. Notice of the appeal was duly given by the board to the applicant by

letter which he admitted receiving on May 16. This letter also set June 14 for a hearing on the remonstrants' appeal and ordered the applicant to cease work until the appeal could be decided.

At the opening of the hearing on said appeal before the zoning board applicant's attorney moved that the appeal be dismissed on the ground that it was not taken within a reasonable time. This motion was denied and evidence was then presented by several remonstrants and by the applicant. At the conclusion of the hearing the board decided unanimously that in these circumstances the appeal had been taken in a reasonable time; that the building inspector had overstepped his authority in granting these permits in violation of the zoning laws, as amended, both as to setbacks and area restrictions; and therefore that the action of the building inspector in issuing permits to the applicant to build a house and garage on each of lots Nos. 136, 137 and 138 on assessors' plat No. 301 be not upheld and that the permits be revoked.

The applicant first contends that the remonstrants knew of the permits and all building operations from the beginning, as they were public, and by waiting until applicant had expended large sums of money and until each house and two of the garages had been substantially constructed have estopped themselves from asserting any alleged violation of the granting of the permits; and that if remonstrants are not thereby estopped as a matter of law, then for the same reasons their appeal was not filed within a reasonable time as required by the ordinance.

In our opinion the board was not justified in finding on the evidence in this record that the remonstrants had taken their appeal within a reasonable time. The ordinance required that such an appeal from the issuance of a permit must be taken within a reasonable time. What is a reasonable time is not expressly defined or limited in the ordinance, and therefore must be determined upon the peculiar facts of each case.

In the instant proceeding the permits were granted February 17, 1950 and building operations thereunder were commenced almost immediately. The issuance of the permits and the prospective building operations were public and admittedly known to the remonstrants. At least one of them complained to the building inspector before actual building was commenced; another made his complaint within two days after building operations had started; and apparently the latest substantial complaint to the building inspector was made by a remonstrant on his return from Florida sometime in the latter part of February.

Each remonstrant had an independent right of appeal under the ordinance. No remonstrant was induced to refrain from taking such an appeal because of any misleading statement by the building inspector to the effect that he would relieve them of that obligation by his taking steps to enforce the zoning ordinance. On the contrary from the beginning and consistently the building inspector unequivocally stated his position to all complaining remonstrants so that they knew not later than February that he would not intervene to prevent the applicant from continuing to build under these permits. While such remonstrants knew of the building inspector's attitude, they nevertheless stood by and did not file their appeal until on or about May 11, 1950, almost three months from the date when the permits were issued and the building operations were commenced. By that time the three single family dwellings and two of the garages were substantially completed without any complaint being made directly to the applicant and without any interference from a city official.

The applicant was thereby permitted to expend a large amount of money in the apparent belief that his permits were valid, all of which expenditures could have been prevented by timely action by the remonstrants. Of course if fraudulent conduct between the applicant and the building inspector were shown and found by the board another

question might be presented. While the board found that the applicant "obtained these lots through connivance for speculative purposes," that finding clearly relates to the mere purchase of the lots. There is no finding that the permits were obtained through any fraudulent connivance between the applicant and the building inspector. Nor is there evidence in this record upon which such a finding of fraud could reasonably be based.

Therefore the question before the board was whether the evident hardship caused by so long a delay in filing the appeal should be borne by the applicant, who held an apparently valid permit, or by the remonstrants who stood by without taking advantage of their independent right under the law to file their own appeal when they knew the applicant was expending considerable money in building and that construction under the permits would not be prevented by the building inspector who is the enforcement officer under the zoning ordinance.

In the absence of evidence to support a finding of fraudulent conduct between the applicant and the building inspector, or otherwise to excuse the remonstrants for such long delay in filing their appeal under the ordinance, we are constrained to hold on this record that the board erred in deciding that the appeal had been taken within a reasonable time. In the peculiar circumstances the applicant's motion that the appeal be dismissed should have been granted. On this view we do not reach or decide the merits of other questions argued by the parties.

The petition for certiorari is granted, the decision of the respondent board is reversed, and the records and papers certified to this court are ordered sent back to the respondent board.

*Philip S. Knauer, Kirshenbaum & Kirshenbaum,* for petitioners.

*Hailes L. Palmer,* City Solicitor of Warwick, for respondent.