David E. ZEILSTRA

v.

BARRINGTON ZONING BOARD OF REVIEW et al.

No. 78–37–M.P.

Supreme Court of Rhode Island.

July 10, 1980.

Oster, Groff & Prescott, George M. Prescott, Lincoln, for petitioner.

Hinckley, Allen, Salisbury & Parsons, Michael P. DeFanti, Providence, for respondents.

## OPINION

WEISBERGER, Justice.

This matter is before us on a petition for certiorari to review a judgment of the Superior Court affirming a decision of the Zoning Board of Review of the Town of Barrington (the board) which revoked the petitioner's building permit. We granted the petition, *Zeilstra v. Barrington Zoning Board of Review*, R.I., 386 A.2d 201 (1978), and issued the writ; in response thereto the pertinent records have been certified to this court.

The record indicates that David E. Zeilstra submitted an application to the Barrington building inspector on May 3, 1976, for a permit to erect a one-and-one-half story "garage and utility building" on his property—lot 72, assessor's plat 10—located in a residential A zone in the town of Barrington. The permit, issued that same day, authorized "D.E. Zeilstra Ltd." to build a garage in accordance with the petitioner's application. In early July of 1976, Zeilstra sought permission to construct an additional story. The building inspector amended the original application to provide for a two-and-one-half story structure twenty-six rather than eighteen feet in height. The permit remained as initially issued.

On July 9, 1976, respondent Nathaniel Rosner, an abutting landowner, noticed the installation of studs for a second floor on his neighbor's garage. He went to the office of the building inspector to inquire about petitioner's permit. The inspector told Rosner that the Barrington zoning ordinance did not provide for restrictions on the height of an accessory building in a residential zone and insisted that "he couldn't stop it."

After several unsuccessful attempts to register a formal complaint with various town officials, Rosner wrote a letter to the zoning board of review on August 16, 1976, in which he expressed concern about the height of the structure, the openings for picture windows, and the porches being built on the upper levels. Three days later, Rosner appeared before the board to complain; the board directed the building inspector to inform Zeilstra that an appeal had been filed on the issuance of the building permit and that, as a consequence, he must cease construction. Zeilstra received the notice on August 23, 1976. That same day, the board's secretary sent petitioner a letter advising him that a hearing would be held September 2, 1976, on the appeal from the building inspector's decision to issue him a building permit for a garage.

At the hearing, the building inspector conceded that there was no specific provision in either the town zoning or building ordinance that referred to a "utility building" and that the permit itself provided only for the construction of a garage. In addition, the inspector read a portion of § 1–9–2 of the Barrington zoning ordinance which delineates the uses permitted in an A residence zone.[1]

---

1. The building inspector read that portion of § 1–9–2 of the Barrington zoning ordinance which provides:

   "(c) Accessory Building including a private garage, accessory living quarters, guest house, or a recreation room, provided that no guest house or accessory living quarters shall be located on any lot having an area of less than 30,000 square feet and no such building shall be located less than 20 feet from any lot line."

The petitioner testified that he intended to use the building for the housing of motor vehicles and the storage of power tools and that he did not intend to devote any portion of the garage to residential, commercial, or industrial uses. He did admit that he planned to use part of the garage for his hobby-shop, that he might occasionally use the shop to cut a board in connection with his building-contract business, and that he had installed sliding doors and decks on the upper stories so that he might sit outside and enjoy the view. In addition, he testified that he would probably invite friends in to play pool on the third floor and to go out on the deck and look at the "ocean." [2] Under persistent questioning by the board, he acknowledged that these activities might be considered "entertaining." Zeilstra indicated that there was no plumbing on the premises for the disposal of waste; there was, however, a water line and a floor drain for the drainage of surface water.

The petitioner later admitted also that he planned to build a combination apartment/garage on another lot after he originally applied for the permit, but that after discovering he could not effectuate his plan "for technical reasons," he then asked the building inspector if he could "go up one more floor" for additional storage space on the instant lot. A neighbor of petitioner testified to the effect that Zeilstra had stated in the past he intended to build a garage with an apartment above it on his property.

Following the hearing, the board published a decision in which it found that petitioner intended to use the structure in a "manner that is more consistent with living quarters than with any other use and, in addition, to perhaps use the second floor in conjunction with his business purposes or of a commercial nature." It found further that the intended uses of the building were not within the uses that the ordinance permits. The board sustained the appeal, therefore, quashed the permit, and ordered Zeilstra to disassemble the building or bring it into conformity with the original plans.

Pursuant to G.L.1956 (1970 Reenactment) § 45–24–20, petitioner appealed the ruling to the Superior Court for Providence and Bristol Counties, naming the zoning board and Rosner as defendants. After consideration of the record of the zoning board and memoranda submitted by the parties, the trial justice rendered a decision in which he pointed out that the Barrington zoning ordinance includes no provisions authorizing the construction of a "utility building" as an accessory building in a residential A zone. The action of the building inspector, according to the trial justice, in granting a permit for the construction of a frame building in accordance with petitioner's application, was clearly illegal and void. The court deemed it unnecessary to rule on the parties' various interpretations of the permitted uses in § 1–9–2(c) of the zoning ordinance because petitioner's permit authorized construction of a garage only, and the court agreed with the board's determination that the structure being erected was definitely not a garage.

The trial justice further found that petitioner had received due notice of the appeal, that the appeal was timely under the circumstances, and that the board was not estopped from judicially compelling petitioner to remove the nonconforming portions of the structure. The court concluded, therefore, that the decision of the board was not affected by any error of law, clearly erroneous, arbitrary or capricious, or characterized by any abuse or unwarranted exercise of discretion, and it affirmed the decision.

■ The petitioner urges us to consider certain errors of law allegedly committed by the zoning board of review. The trial justice, however, affirmed the board's decision on legal grounds other than those presented by the parties in the course of the

---

It is undisputed that the subject lot consists of fewer than 30,000 square feet of land.

**2.** Although the word "ocean" appears in the testimony, we feel constrained to recognize the fact that the town of Barrington borders only upon Narragansett Bay, a not-inconsiderable body of water, but not quite equivalent to the broad Atlantic.

appeal. On certiorari to this court, we review the record for the sole purpose of determining whether there is legally competent evidence to support the findings of the tribunal below. *Toohey v. Kilday*, R.I., 415 A.2d 732, 735 (1980); *DeStefano v. Zoning Board of Review of Warwick*, R.I., 405 A.2d 1167, 1170 (1979). We have repeatedly distinguished between the scope of review by the Superior Court on appeal and our standard of review on certiorari. *See, e. g., Toohey v. Kilday*, R.I., 415 A.2d at 735; *Apostolou v. Genovesi*, R.I., 388 A.2d 821, 824–25 (1978).

As his first contention, petitioner asserts that he did not receive "due notice" of the hearing[3] since the letters from the board stated only that the appeal concerned the building inspector's decision to issue him a permit and failed to inform him that Rosner was seeking broad relief in respect of the structure's height.

■ We have often observed that adequate and sufficient notice of the pendency of board action is a requirement of due process in zoning matters, *Carroll v. Zoning Board of Review of Providence*, 104 R.I. 676, 679, 248 A.2d 321, 323 (1968); *Cugini v. Chiaradio*, 96 R.I. 120, 189 A.2d 798 (1963), and that compliance with the mandate of G.L.1956 (1970 Reenactment) § 45–24–18 is a jurisdictional prerequisite. *Corporation Service, Inc. v. Zoning Board of Review of East Greenwich*, 114 R.I. 178, 180, 330 A.2d 402, 404 (1975); *Carroll*, 104 R.I. at 678–79, 248 A.2d at 323; *see also* 3 Anderson, *American Law of Zoning* § 20.17 (2d ed. 1977); 3 Rathkopf, *The Law of Zoning and Planning* § 37.05 (4th ed. 1979). To be sufficient, the notice sent "must be reasonably calculated, in light of all the circumstances, to apprise the interested parties of the pendency of the action, of the precise character of the relief sought and of the particular property to be affected." *Paquette v. Zoning Board of Review of West Warwick*, 118 R.I. 109, 111, 372 A.2d 973, 974 (1977).

Clearly, petitioner received due notice of the hearing of the board. He was present at the August 19, 1976 meeting at which the board directed the building inspector to notify him of an appeal. The next day the inspector visited him and told him that a cease-and-desist order had been mailed. The petitioner received that notice three days later. He also received a notice from the secretary of the board. If petitioner thought that Rosner objected to the garage itself, he has no cause now to complain that Rosner's concern was only with the garage's second and third stories.

■ In any event, Zeilstra attended the September 2, 1976 meeting with counsel. He actively participated in the proceedings and specifically declined the opportunity to obtain a continuance. When a party appears before a zoning board of review and avails himself of the opportunity to present his position to the board, he thereby waives his right to object to any alleged deficiencies of notice. *Champagne v. Zoning Board of Review of Smithfield*, 99 R.I. 283, 288, 207 A.2d 50, 53 (1965); *Perrier v. Board of Appeals of Pawtucket*, 86 R.I. 138, 134 A.2d 141 (1957); *Hirsch v. Zoning Board of Review of Pawtucket*, 56 R.I. 463, 187 A. 844 (1936); 3 Anderson § 20.23. Nor has petitioner demonstrated precisely how he might have been prejudiced by the notice he did receive. *See Perrier*, 86 R.I. at 144, 134 A.2d at 144.

The petitioner also maintains that Rosner's appeal was untimely. In particular he claims that Rosner first noticed the initial construction of the second story on July 9, 1976, but waited until after the August 19 meeting of the board to file a formal appeal. During this period, petitioner asserts, he completed 80 percent of the construction on his garage.

Although G.L.1956 (1970 Reenactment) § 45–24–16 provides that an appeal to the board of review shall be taken "within a reasonable time as provided by the rules of

---

3. Both G.L.1956 (1970 Reenactment) § 45–24–18 and § 1–15–2–e of the Barrington zoning ordinance require, inter alia, that the board give due notice for the hearing of an appeal to the parties in interest.

the board," and § 1–15–2–b of the Barrington zoning ordinance empowers the board "to make reasonable rules and regulations concerning procedure on such appeals including the time within which such appeals may be taken," the board has never set a time limit for the filing of appeals. Thus the determination of the timeliness of Rosner's appeal must depend upon the peculiar facts of the instant case. *Hartunian v. Matteson*, 109 R.I. 509, 516, 288 A.2d 485, 489 (1972); *Elmcrest Realty Co. v. Zoning Board of Review of Warwick*, 78 R.I. 432, 82 A.2d 846 (1951).

■ A reasonable time for the appeal from the grant of a building permit does not necessarily begin to run the moment the permit is issued or the construction commenced. The time for Rosner's appeal began to run when he became chargeable with knowledge of the decision from which he sought to appeal. *Hardy v. Zoning Board of Review of Coventry*, 113 R.I. 375, 379, 321 A.2d 289, 291 (1974). That day was July 9, 1976—the day Rosner first noticed the building progressing beyond the first story. As the court below noted, "until the so called garage suddenly sprouted into a unique looking two and one half story structure, the objecting landowner had no occasion for alarm."

Immediately upon discovering the burgeoning expansion of the building, Rosner contacted the building inspector, who told him that nothing could be done. Undaunted he telephoned the town manager, who spoke with the building inspector and received a similar response. Shortly thereafter, when he noticed the installation of a third set of studs, Rosner again contacted the inspector. Next, he contacted the secretary of the board and learned that the board's next meeting was not until August. Concerned about waiting until then, Rosner appeared before the town council, which referred him to the zoning board. Finally, Rosner wrote the August 16 letter to the

board. Clearly, there is competent legal evidence to show that Rosner responded to the situation as a diligent resident, exerting all reasonable effort to bring his complaint to the attention of the proper town authority.

■ In arguing that the decision of the zoning board was contrary to the law, petitioner overlooks the fact that the trial justice ruled that the permit—even though it provided only for the construction of a garage—was invalid because it incorporated by reference petitioner's application listing the proposed use of the structure as "garage and utility building."[4] As the court below noted, the Barrington zoning ordinance contains no provision authorizing construction of a "utility building" as an accessory building in a residential A zone. When presented with petitioner's application for a building permit, the inspector had no authority whatsoever "other than to determine that the proposed construction conform[ed] precisely to the terms of the pertinent provisions of the zoning ordinance." *Arc-Lan Co. v. Zoning Board of Review of North Providence*, 106 R.I. 474, 476, 261 A.2d 280, 282 (1970). Since he lacked authority to issue a permit for a use not authorized by the zoning ordinance, *Ajootian v. Zoning Board of Review of Providence*, 85 R.I. 441, 445, 132 A.2d 836, 839 (1957), the action of the building inspector in granting a permit for the construction of a garage and utility building was illegal and void.

■ In any event there is legally competent evidence in the record to support the finding that petitioner designed and intended to use his structure for purposes other than as a garage. At the hearing, petitioner admitted that he planned to use the second and third levels as a hobby-shop and recreation room. Indeed, in his brief petitioner urges us to find that the evidence indicates an intention to use the building in part as a recreation room. The short an-

---

**4.** Since we have determined that the record reflects competent legal evidence to support the decision of the trial justice on these grounds, we need not address the other intri-

guing arguments of petitioner which relate to errors allegedly committed by the board and which the court below did not consider.

swer to this suggestion is that petitioner's permit entitled him to build a garage, and the trial justice concurred in the board's determination that the building under construction was not a garage and did not conform to the definition of a garage as described in the building ordinance.[5] According to § 2–1–4(a) of that ordinance, moreover, he may not construct a recreation room without a lawful permit therefor.

■ Lastly petitioner maintains that the zoning board had no authority to consider the future uses of the building and to declare them to be in violation of the zoning ordinance; he also contests the order directing him to remove the nonconforming portions of the structure. Before a permit will issue, however, pursuant to § 1–4–1 of the town's zoning ordinance, an applicant must demonstrate that his plans and intended use conform in all respects to the provisions of the ordinance. Since G.L.1956 (1970 Reenactment) § 45–24–19 grants the same powers to the zoning board as are possessed by the officer from whom the appeal was taken, the board clearly had the same authority as the building inspector to consider petitioner's intended uses. *See Ajootian v. Zoning Board of Review of Providence*, 85 R.I. at 446, 132 A.2d at 839.

■ Contrary to the position of the board of review and the ruling of the trial justice, only the Superior Court had authority to order removal of that portion of the structure which did not conform to the definition of garage as set forth in the Barrington ordinance. Zoning boards are creatures

of statute; hence they possess only the powers, rights, duties, or responsibilities conferred upon them by the Legislature. *Hassell v. Zoning Board of Review of East Providence*, 108 R.I. 349, 351–52, 275 A.2d 646, 648 (1971). In accordance with G.L. 1956 (1970 Reenactment) §§ 45–24–6 and 45–24–7,[6] only the municipality, through its town solicitor, may initiate proceedings to enforce local zoning ordinances. *Town of Coventry v. Hickory Ridge Campground, Inc.*, 111 R.I. 716, 724, 306 A.2d 824, 828–29 (1973). The statutes, which we read in pari materia, confer exclusive jurisdiction of these matters upon the courts and preclude a local legislative body from making a similar grant of such jurisdiction to the zoning board and from designating the building inspector as the proper party to bring such actions. *Mauran v. Zoning Board of Review of Cranston*, 104 R.I. 604, 607–08, 247 A.2d 853, 856 (1968); *Bertrand v. Zoning Board of Review of Burrillville*, 99 R.I. 329, 207 A.2d 604 (1965); *Town of Lincoln v. Cournoyer*, 95 R.I. 280, 186 A.2d 728 (1962).

■ Although we are constrained to point out that the Barrington zoning board did not have authority to order petitioner to remove the nonconforming portions of his structure, both the town and the trial justice conceded that enforcement of the board's order would require a separate judicial proceeding. The court below, therefore, acted well within the scope of its authority in affirming the board's revocation of petitioner's building permit. We shall regard that portion of the board's

**5.** Section 2–2 of the Barrington building ordinance defines "private garage" as follows:

"An accessory building or portion of a building for the housing of motor vehicles and in which no business or industry connected directly or indirectly with motor vehicles is carried on."

**6.** General Laws 1956 (1970 Reenactment) § 45–24–6 provides in pertinent part:

"Penalties for ordinance violations—Injunction.—The city or town council * * * may also cause suit to be brought in the supreme or superior court in the name of such city to restrain the violation of, or to compel compliance with, the provisions of any such ordinance."

Section 45–24–7 reads, in part, as follows:

"Judicial aid in enforcement of ordinances.— The supreme court and the superior court, within their respective jurisdictions * * * shall, upon due proceedings in the name of such town or city instituted by its town or city solicitor, have power to issue any extraordinary writs or to proceed according to the course of equity or both:

" * * *

"To order the removal by the owner of any building, structure or other thing existing in violation of any ordinance enacted under the provisions of this chapter and to authorize some official of such town or city in default of such removal by the owner to remove it at the expense of such owner."

**310**

order relating to removal of a portion of the building as an administrative directive that is not susceptible of judicial implementation in the framework of this action.

The petitioner proposes, however, that the town should be estopped from judicially compelling petitioner to remove that portion of the structure which does not conform to the definition of a garage as set forth in the building ordinance because he has completed 80 percent of the structure in reliance upon the permit and with the knowledge and acquiescence of the building inspector.

Since an order directing the removal of the petitioner's building would require a separate judicial proceeding, any such claims would have to be addressed to the court in the course of that proceeding.[7] Although the trial justice did purport to deal in his decision with the question of estoppel, any such determination must be considered both as premature and as outside the scope of the present action. Upon the issues appropriately cognizable in this action, we hold that the trial justice properly affirmed the decision of the Barrington Zoning Board of Review.

Accordingly, the petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the record certified to this court is remanded to the Superior Court with our decision endorsed thereon.

---

7. In this particular case, it appears from evidence in the record that the greater portion of the building was completed after petitioner had been notified of the appeal to the board.