DECISION
This appeal seeks review of a March 1, 1994 decision of the Pawtucket Zoning Board of Review (the Board) granting Antonio Andrade (Andrade) a purported variance from the terms of the Pawtucket Zoning Ordinance. Daniel and Mary Lawrence (together Lawrence) pray this decision be reversed. Jurisdiction is pursuant to R.I.G.L. 1956 (1993 Reenactment) § 45-24-69.
Facts/Travel
The Board granted Andrade a variance on real estate he owns at 11 Willow Avenue in Pawtucket, also known as tax assessor's plat 51, lot 232. Andrade owns two contiguous lots, number 158, located on Mineral Spring Avenue, upon which Andrade has a home and office, and lot number 157 located on Willow Street, upon which Andrade owns rental property. Notwithstanding the common ownership of lots 232, 157 and 158, each is of sufficient dimension and area such that they have not merged. Lots 157 and 158 abut each other and together they abut lot 232, but there is an eight foot drop in elevation from lots 157 and 158 to 232.[1]
Willow Avenue is a paved right of way approximately twenty-five (25) feet wide and two-hundred (200) feet from Mineral Spring Avenue and provides the only access to lots 232 and 157. The City of Pawtucket has placed a stop sign and restricted parking signs on Willow Avenue, but it is not an "official" street in Pawtucket.[2]
In 1990, pursuant to a validly issued city permit, Andrade built a split-level garage with four (4) bays on what were then lots 24 and 26. In 1992 Andrade attempted to obtain certificates of zoning compliance and occupancy. He was advised by a zoning officer that he would need to obtain a "Viti" variance, because lots 24 and 26 together contained only 19,600 square feet and the ordinance requires 20,000 square feet, as well as a frontage variance to allow for the required one hundred (100) foot frontage to be on Willow Avenue. Although lots 24 and 26 together had the required 100 feet of frontage, the 100 feet was not on an "official" city street. After a hearing in October 1992, the Board denied both requested variances. No appeal was taken, rather Andrade attempted to have the City Council accept Willow Avenue as an official street,[3] which request was also denied.
In 1993, Andrade merged lot 23 with 24 and 26, creating lot 232 containing nearly 30,000 square feet with 150 feet of frontage on Willow Avenue. Also, Andrade deeded an eighty (80) foot cul-de-sac from lot 232 to the City to be used by emergency vehicles in conjunction with Willow Avenue.[4]
In January 1994, Andrade was advised that the lot continued to require a variance as the building fronts an unofficial street. Andrade filed his application requesting a variance from R.I.G.L. § 45-23.1-4. A hearing was held and after reviewing the evidence presented by Andrade and the testimony of several objectors[5] the Board voted 4-1 to grant Andrade his requested variance from the terms of the Pawtucket Zoning Ordinance subject to the cul-de-sac remaining open for public access. After making some preliminary findings, the Board stated "[t]he only remaining issue concerns frontage. The Zoning Ordinance calls for lot frontage on a street, but does not specifically define street. However, the general Code of Ordinance does define street and does so very broadly (i.e., avenues, alleys, lanes, and viaducts)." Finding #5. The Board stated that were it to assume that the ordinance required frontage on an "official" street, denial of relief would deprive Andrade of all beneficial use of his property.
Lawrence timely appealed pursuant to § 45-24-69 and also filed an appeal with the Rhode Island Supreme Court pursuant to § 45-23.1-5. On November 15, 1994 the Supreme Court issued its order dismissing the petition stating the issue was not properly before the Court citing § 45-24-69. Now, before this court, Lawrence argues that (1) the Board did not properly have the issue before it due to lack of notice, (2) the decision is contrary to the facts, and (3) the "mapped streets" chapter of the Rhode Island General Laws[6] do not apply in this case.
Andrade counters arguing (1) Pawtucket has not enacted a "mapped street" ordinance, (2) lot 232 was more than adequate in size and dimensions, and (3) his lot is zoned "MO" manufacturing open zone, which allows for an auto shop.
This court when reviewing a zoning board decision is controlled by G.L. 1956 (1993 Reenactment) § 45-24-69 (D) which provides:
45-24-69. Appeals to Superior Court (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
When reviewing a decision of a zoning board, this court may not substitute its judgment for that of the zoning board if it finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 525 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. GeorgeSherman Sand and Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981).
Andrade is correct, as found by the Board, when he states that the lot is situated in an area zoned MO, manufacturing open zone, which permits the operation of an auto repair shop. Consequently Andrade was not required to petition the Board but for the issue raised as to the necessity for frontage on an "official" street.
Both parties acknowledge in their briefs to this court that at the time of Andrade's application Pawtucket had not enacted the "mapped street" ordinance which would require all buildings to front a "mapped" street. The Pawtucket zoning ordinance simply calls for lot frontage on a street. The Code of Ordinance defines a street as i.e., avenues, alleys, lanes, and viaducts. As stated above, the Board found that the lot in question was a legal conforming lot and that all dimensional requirements had been satisfied. Having made these findings, the issue of loss of all beneficial use need not have been addressed.
Nevertheless, Andrade, due to the advice of a "zoning officer" petitioned for a frontage variance. A hearing was held at which Lawrence appeared and protested the use of the lot as an auto repair shop citing noise, smell and a reduction in the surrounding property value as grounds for the objection. Lawrence presented the Board with a petition against the requested variance signed by many, if not all, of the neighbors.
Furthermore, on appeal, Lawrence claims that the Board lacked authority in holding the hearing because notice of the hearing was not adequate. This court is not disposed to dwell at length on this ground because Lawrence fails to state how notice was lacking outside the unsupported assertion that "there was no notice of this hearing advertised in a local newspaper or otherwise transmitted to neighbors and other interested parties." It is settled law that the adequacy and sufficiency of notice to the pendency of a board action is a requirement of due process in zoning matters and compliance is a jurisdictional prerequisite.Zeilstra v. Barrington Zoning Board of Review, 417 A.2d 303, 307 (R.I. 1980). To be sufficient, the notice sent must be "reasonably calculated, in light of all the circumstances, to apprise the interested parties of the pendency of the action, of the precise character of the relief sought and of the particular property to be affected." Id. The evidence in the record indicates the notice requirement was adhered to and Lawrence's appearance at the hearing, their recorded protest along with their signed petition, supports this finding. Lawrence did not object to the failure of notice before the Board and under these circumstances, such an appearance must be taken to be a waiver.Hirsch v. Zoning Board of Review, 56 R.I. 463, 466, 187 A.2d 844 (1936).
After a review, this court finds there is reliable, probative and substantial evidence in the record to support the Board's finding that the property in question is of more than adequate size and maintains more than adequate frontage to comply with the requirements as set forth in the Pawtucket Zoning Ordinance for property zoned MO. Therefore, although no variance was necessary, the decision of the Board is nonetheless affirmed.
The counsel shall prepare and submit on appropriate order for entry.
[1] Lot 232 was considered to be three separate lots when purchased by Andrade: lots 23, 24 and 26.
[2] At the time Andrade filed his application, Pawtucket had not enacted R.I.G.L. § 45-23-1 et seq. entitled "mapped Streets" which would have allowed Pawtucket to deny all permits for the erection of any building unless the lot abuts a street which has been placed on the "official map."
[3] Willow Avenue has existed on unofficial city maps since 1929.
[4] By deeding the cul-de-sac, Andrade, although not required, fulfilled the requirements of R.I.G.L. § 45-23.1-4 which necessitates the need for access to all safety vehicles on all streets placed on the "official" map.
[5] The objections were to the expected use of the land as an auto shop not to the frontage issue before the Board.
[6] R.I.G.L. § 45-23.1 et. seq.