DECISION
This is an appeal from a December 4, 1996 decision of the Zoning Board of Review of the Town of Westerly ("the Board"). That decision upheld the Westerly Zoning Official's ("Zoning Official's") issuance of a Certificate of Ownership ("Certificate") to Karen L. Hayden and Robert P. Hayden ("defendants") to allow the defendants to apply for a license to operate a guest house on their property. Cynthia O'Brien-Luzzi ("plaintiff") is a neighbor who owns property within 200 feet of the defendant's property. Jurisdiction in this Court is pursuant to G.L. 1956 § 45-24-69.
 Facts/Travel
The defendants own real estate located at 47 Elm Street in Westerly, Rhode Island ("the property"). The property is designated as Assessor's Lot 1 on Plat 66. The property, when it was purchased by the defendants on or about June 29, 1988, was a nonconforming use. Located in an R-6 residential zone, it consisted of a three-family dwelling and an accessory building variously referred to as a barn, garage, or carriage house. Pursuant to § 7.2 of the Westerly Zoning Ordinance ("Ordinance"), a three-family dwelling is not a permitted use in an R-6 zone. However, pursuant to § 5.2(A) of the Ordinance, the defendants were permitted to continue operating the three-family dwelling ("the dwelling") as a legal nonconforming use. Section 5.2(A) provides:
 "(A) Continuance of existing uses. Buildings and land in use in a manner not conforming to the provisions of this ordinance at the time of its passage shall be considered nonconforming uses and shall be permitted to continue until such time that such use is discontinued, destroyed, demolished or changed."
On or about June 10, 1991, the defendants recorded a deed which subdivided their property into two parcels. The dwelling was situated on one lot of 7,054 square feet, while a new lot comprising 6,078 square feet was created for the carriage house. The defendants subsequently sought a building permit to renovate the carriage house. The Zoning Official expressed concerns as to the form and legality of the subdivision. In an effort to resolve the matter, an agreement was reached between the defendants and the Zoning Official. The agreement was memorialized in a letter, dated February 3, 1992, from Thomas J. Liguori, Jr., the defendants' attorney, ("Liguori") and countersigned by the Zoning Inspector on February 20, 1992 ("the Agreement"). The Agreement provided:
 ". . . [The Zoning Official] agreed to approve a building permit for the restoration and remodeling of the carriage house in its present location as a one family dwelling upon the following:
 a) reconveyance of the recently conveyed lot so that the entire property is one lot;
 b) physical removal of the kitchen on the third floor of the main house, and recording of a restrictive covenant limiting the property to a total of three dwelling units — two in the main house and one in the carriage house;
 c) filing of a plan with the Department of Public Works proposing a water and sewer hook-up from the carriage house to Cross Street; . . ."
On September 18, 1992, the defendants were issued a building permit to renovate the carriage house into a single-family dwelling. It is unclear from the record what the carriage house was used for prior to its renovation. It is also unclear as to whether the Board, when it decided to grant the building permit, considered the reduction in the dwelling house from a three-family dwelling to a two-family dwelling and the renovations of the carriage house into a single-family dwelling to be "changes" or "additions" to the nonconforming use.
On or about April 9, 1996, the Zoning Official wrote a letter to the defendants expressing concerns that the defendants had not yet complied with the conditions they had previously assented to in the Agreement. In his letter, the Zoning Official requested that the defendants confirm their compliance.
The Zoning Official later granted the defendants a Certificate so that they could apply for a license to operate a guest house within the two-family dwelling. Subsequently, on or about October 15, 1996, the Westerly Town Council, sitting as a licensing board, granted the defendants a license.
The plaintiff, who owns property at 49 Elm Street, filed an appeal of the Zoning Official's issuance of the Certificate, with the Board. Two days before the Board hearing, on November 4, 1996, the defendants recorded two quitclaim deeds. One deed reestablished the two parcels as a single lot. The second deed contained the restrictive covenants, required by the Agreement, limiting the property to only three dwelling units — two in the main house (the dwelling) and one in the carriage house.
On November 6, 1996, the Board held an advertised, public hearing to consider the plaintiffs appeal. The Board upheld, by a unanimous vote, the Zoning Official's issuance of the Certificate enabling the defendants to apply for a license to operate the guest house. The Board's decision was posted on December 6, 1996. It was based upon the following six, specific findings of fact:
 "(1) there is no conflict between the granting of a guest house license to the [defendants] and the February 1992 agreement regarding this property,
 (2) the appropriate deeds have been recorded by the [defendants],
 (3) the restrictive covenant limited the property to a maximum of three dwelling units but did not preclude the use of a structure on the property as a guest house or single family home,
 (4) a guest house by definition is not a dwelling unit,
 (5) a guest house is permitted in a R-6 zone, and
 (6) the [defendants] have been granted a valid license to operate a guest house and should be allowed to continue operation . . ."
The plaintiff originally appealed the issuance of the building permit to renovate the carriage house. That appeal was dismissed as being untimely. The present appeal, which was timely filed, appeals the issuance of the Certificate for the guest house.
 Standard of Review
Superior Court review of a zoning board decision is controlled by R.I.G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 "45-24-69. Appeals to Superior Court
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
When reviewing a decision of the zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence.Apostolou v. Genovesi, 120 R.I. 501, 507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co., Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d at 824-25). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New EnglandNaturist Ass'n. Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town of Narragansett v. International Association of FireFighters, AFL-CIO, Local 1589, 119 R.I. 506, 380 A.2d 521
(1977)).
 Changes/Additions to a Nonconforming Use
The plaintiff argues that the Building Official, and subsequently the Board, erred in permitting the defendants to make changes to the nonconforming use that did not make the use conforming. Specifically, the plaintiff alleges that the defendants were erroneously permitted to convert the originally nonconforming, three-family dwelling into a multi-family development contained in two, detached structures, which also is not permitted in an R-6 zone. The plaintiff maintains that pursuant to § 5.2(D), a nonconforming use may be changed only to a use that conforms to the Ordinance.
Section 5.2(D) provides: "(D) Change of Use. A nonconforming use may be changed only to a use that conforms to the provisions of this Ordinance." Section 5.2(E) provides: "Extension orAddition to a Nonconforming Use. A legal nonconforming use shall be extended or added to only by special use permit; such expansion shall not exceed 25 percent of the floor space or area of use at the time of the passage of this Ordinance. . . ."
As previously stated, it is unclear as to whether the Board, while considering the defendants' application for the building permit, treated the aforementioned renovations as changes or as additions to the existing nonconforming use. Nevertheless, the record evidences that the Board did permit the renovations, and the period in which that decision could have been appealed has lapsed.
 Guest House v. Dwelling Unit
The plaintiff further contends that the Zoning Official, and subsequently the Board, erred in awarding the defendants a Certificate to operate the guest house on the property. The plaintiff insists that the operation of the guest house violates the conditions of the Agreement and the restrictive covenants in the quitclaim deed recorded on November 4, 1996.
The Board argues that the Agreement and restrictive covenants limited the defendants' use of their property to only three "dwelling units." The Board maintains that the main house contains two of the permitted dwelling units, while the carriage house comprises the third permitted dwelling unit. The Board opines that the addition of the guest house does not constitute a fourth dwelling unit.
A "dwelling" is defined by the Westerly Zoning Ordinance as ". . . a structure or portion thereof providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking, and sanitation, and containing a separate means of ingress and egress." In the Ordinance's "Standard Zoning District Use Tables," the category titled "Lodging house or Guest house" is listed beneath the heading "Residential and Dwelling Uses." Although the Ordinance does not define the term "Guest house," pursuant to § 13.1(A)(25), a guest house may constitute a "dwelling" where it contains independent, permanent provisions for living, sleeping, eating, cooking, sanitation, and a separate means of ingress and egress. The Board failed to make any of the aforementioned findings of fact. As such, this appeal is decided upon other grounds.
 Accessory v. Principal Use
"Use" is defined as "the principal purpose or activity for which land or buildings are designed, arranged, or intended, or for which land or buildings are occupied or maintained." Section 13.1(90). "Accessory Use" is defined as the ". . . use of a portion of land or building, customarily incidental and subordinate to the principal use of the land or building. An accessory use shall be restricted to the same lot as the principal use." Section 13.1(3). Accessory uses, unlike principal uses, do not violate § 7.4(E) which provides: "No yard or open space required by this ordinance for any building shall be deemed to satisfy the yard or open space requirement for any other building." Accordingly, pursuant to the ordinance, "[o]pen or semi-enclosed structures such as porches, canopies, balconies, platforms, garages, covered patios, decks and similar projections attached to a principal building shall be considered parts of the building and shall not project into the required yards. When such structures are not attached to the principal building they shall be considered accessory structures . . ." § 7.4(E)(1). Accessory and principal uses are distinguishable from planned units and cluster developments which provide for a mixture of uses on the same site. See §§ 13.1(A)(13), (67).
While a "guest house" is a permitted use in an R-6 zone, it is permitted only as a principal use, not as an accessory use. The Board attempts to classify the guest house as an accessory use rather than as a principal use. However, the term "Guest house" is specifically enumerated under the principal use heading, "Residential and Dwelling Uses." The term "guest house" does not appear under the heading titled "Accessory uses."
Moreover, this Court finds that a guest house, which is to be used as a permanent dwelling, is not included in those examples of accessory uses enumerated in the Ordinance under § 7.4(E)(1): "[o]pen or semi-enclosed structures such as porches, canopies, balconies, platforms, garages, covered patios, decks and similar projections attached to a principal building . . ." While some ordinances may permit guest houses as accessory uses,see Zeilstra v. Barrington Zoning Board of Review, 417 A.2d 303, 310 fn. 1 (R.I. 1980), the instant Ordinance does not.[1] Since the Ordinance contains no provision authorizing construction of a guest house as an accessory building in an R-6 zone, the Board erred in granting the Certificate to the defendants. SeeZeilstra, supra, (where the court held that since the ordinance contained no provision authorizing construction of a `utility building' as accessory building in Residential A zone, the act of granting a permit for construction of a garage or utility building was illegal and void.)
Prior to the operation of the guest house, the defendants' property already consisted of at least one other principal use — the dwelling. It is unclear as to whether the Board viewed the carriage house as a principal use or as an accessory building.
Other than in the instance of a cluster or planned unit development permitted by an ordinance, two principal uses may not exist on the same lot. Since one principal use (the dwelling) already existed on the defendants' property, the Board erred in permitting the defendants to operate an additional principal use on the same lot.
As such, this Court finds that the Board's decision was in violation of statutory and Ordinance provisions, was in excess of the Board's authority, and was made upon unlawful procedure. Its actions were arbitrary, capricious, and characterized by an abuse of discretion and other errors of law, such that substantial rights of the plaintiff were prejudiced. Accordingly, the Board's decision to grant the defendants' Certificate to operate the guest house must be and is reversed.
Counsel shall submit the appropriate judgment for entry.
[1] It is important to note that although the ordinance inZeilstra permitted guest houses as accessory uses, it also required that the applicant's lot contain a minimum of 30,000 square feet. Interestingly, the defendants' lot in the instant case contains only 13,132 square feet.