AMENDED DECISION
The Petitioner, Thomas A. Palangio (hereinafter "Petitioner"), appeals the decision of the Providence Zoning Board of Review (hereinafter "Board"), which denied his request for a dimensional variance. Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 Facts and Travel
The Petitioner is the owner of lots 9 and 10 on Assessor's Plat 86, which comprise the property (hereinafter "Property") on 238 Doyle Avenue in Providence, Rhode Island. The Petitioner purchased the Property on October 20, 2006 for $425,000. (Compl. at 2.) The Property consists of a residential house on lot 9 and a carriage house on lot 10. Both lots are located in the residential R-1 Zone. (Ex. 1.) It is the status of the carriage house on lot 10 which has given rise to the current litigation.
The carriage house on Lot 10 was built over 100 years ago, in approximately 1890. (Compl. at 2 and Ex. 1.) Lot 10, however, was not created until 1930. In 1930, *Page 2 
Lot 10 met the dimensional requirements for a separate lot. Id Since its construction, the carriage house has been used as a livery, a place of assembly for showing movies to persons in the neighborhood, and as a four-car garage. Id Lot 10 has also been separately assessed and taxed since its creation. Id.
Before purchasing the Property, the Petitioner made several inquiries as to the status of Lots 9 and 10. Id The Petitioner inquired of the City of Providence Tax Assessor's Office, the Tax Collector's Office, the Department of Building and Zoning, and the Providence Zoning Board of Review. Id Based on the City officials' affirmative representations that Lots 9 and 10 were separate and unmerged lots, the Petitioner purchased the Property. Id
The Petitioner intended to convert the carriage house into a single-family dwelling without enlarging the existing structure. (Ex. 2.) To accomplish this, the Petitioner applied for a dimensional variance on November 14, 2006. Id Petitioner sought the variance because the carriage house is not in dimensional conformance with the setback provisions of the Providence Zoning Code (hereinafter "Code"). Id Section 304, "Dimensional Regulations — Residential Districts," requires that lots in the R-l Zone have a minimum lot size of 6000 square feet. Lot 10 contains 2111 square feet, and lot 9 contains 5384 square feet. (Ex. 1.) Furthermore, § 304.1 of the Code requires Lot 10 to have setbacks which are 4 feet on the side yards and 3 feet on the rear yard.Id. However, the carriage house is set back from the boundary by only 2 feet on each side. Id. Accordingly, the Petitioner was required to file an application to seek approval from the Board to convert the carriage house into a dwelling by the grant of a dimensional variance. *Page 3 
The Board denied the Petitioner's request for a dimensional variance in Resolution No. 9196, dated June 4, 2007. (Ex. 1.) In its decision, the Board noted the Petitioner's request for dimensional relief from § 304 of the Providence Zoning Code and its required setbacks for individual lots. Id The Board also recognized that the proposed conversion of the carriage house into a single-family dwelling "is permitted in this R-l Zone."[1] Id However, the Board, in a 3 — 2 vote, denied the request for a dimensional variance. The Petitioner is aggrieved by the decision of the Board and has filed a timely appeal. Forthwith is this Court's opinion.
 Standard of Review
The Superior Court review of a zoning board decision is controlled by G.L. 1956 (1991 Reenactment) § 45-24-69(D), which provides:
 (D) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *Page 4 
When reviewing a decision of a zoning board, a justice of the Superior Court may not substitute his or her judgment for that of the zoning board if he or she conscientiously finds that the board's decision was supported by substantial evidence. Apostolou v. Genovesi, 120 R.I. 501,507, 388 A.2d 821, 825 (1978). "Substantial evidence as used in this context means such relevant evidence that a reasonable mind might accept as adequate to support a conclusion and means an amount, more than a scintilla but less than a preponderance." Caswell v. George Sherman Sandand Gravel Co. Inc., 424 A.2d 646, 647 (R.I. 1981) (citingApostolou, 120 R.I. at 507, 388 A.2d 824-825). The reviewing court "examines the record below to determine whether competent evidence exists to support the tribunal's findings." New England Naturist Ass'n,Inc. v. George, 648 A.2d 370, 371 (R.I. 1994) (citing Town ofNarragansett v. Int'l Ass'n of Fire Fighters, AFL-CIO, Local 1589,119 R.I. 506, 380 A.2d 521 (1977)). Conclusional or insufficient evidence warrants the reversal of a zoning board's decision. Hopf v. Bd. OfReview of City of Newport, 120 R.I. 275, 230 A.2d 420 (1967). Regarding questions of law, the court conducts a de novo review. See East Bay CmtyDev. Corp. v. The Zoning Bd. of Review of the Town of Barrington,901 A.2d 1136, 1152, (R.I. 2006).
Our Supreme Court has instructed that this Court should not "search the record for supporting evidence or decide for itself what is proper."von Bernuth v. Zoning Bd. of Review, 770 A.2d 396, 401 (R.I. 2001) (quoting Irish Partnership v. Rommel, 518 A.2d 356, 359 (R.I. 1986)). Rather, this Court may "remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced. . . ." Section 45-24-69. *Page 5 
 Decision of the Board
The Petitioner argues that the Board's decision was made in violation of statutory and ordinance provisions and that it is clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.[2] The Petitioner claims that the Board's decision is arbitrary and capricious and that it constitutes an abuse of discretion. Specifically, the Petitioner contends that he met his burden of proof under § 902.3 of the Code, entitling him by right to convert the carriage house into a residence.
The Board and several abutters to the Property request that this Court affirm the decision of the Board. They contend that the Petitioner bought the property with the intent to convert the carriage house into a second residence as a real estate investment in order to realize financial gain. The Board maintains that the Petitioner has failed to demonstrate that the denial of the requested variance amounts to more than a mere inconvenience. Several abutters objected to the grant of a dimensional variance on the grounds that placing a residence on the undersized lot will contribute to the congestion of the neighborhood, increase the traffic on Doyle Avenue and Morris Avenue, and cause them to lose the privacy of their homes.
This Court begins its review of the Board's decision by noting that the conversion of the carriage house is "permitted" in the R-l Zone of the City of Providence despite § 304 of the Code and the current minimum lot size provision. (Ex. 1.) Section 304 requires that single lots of record contain a minimum of 6000 square feet in the residential R-l Zone. Since Lot 10 only contains 2111 square feet, it is "nonconforming *Page 6 
by dimension." Section 200.3, "Nonconformance by Dimension," defines such a substandard lot as "[a] building or structure or parcel of land which is in nonconformance with the dimensional regulations of this ordinance is nonconforming by dimension."
Section 200.1, "Nonconformance — Lawfully Established," addresses the current status of nonconforming lots which predate the passage of the Code. Section 200.1 states:
 [a] building, structure or the use of land was lawfully established if it was in existence prior to June 6, 1923, or was established in conformance with the zoning ordinance in effect at the time the use was established. A lot was lawfully established if it was of record or shown on a recorded plat prior to September 21, 1951 and was separately owned.
Since the lot was created in 1930, it is deemed legally nonconforming by dimension. (Ex. 1.)
Furthermore, § 201 embodies the policy aims of the Code with respect to nonconforming uses. Section 201, "Building or Structure Nonconforming — By Use; Intent," states that
 [njonconforming uses are incompatible with and detrimental to permitted uses in the zoning districts in which they are located. Nonconforming uses cause disruption of the comprehensive land use pattern of the city, inhibit present and future development of nearby properties, and confer upon their owners a position of unfair advantage. It is intended that existing nonconforming uses shall not justify further departures from this ordinance for themselves, or for any other properties.
 § 201.1. Treatment in Residential Zones.
Nonconforming uses in residential zones are to be treated in a stricter fashion than nonconforming uses located in nonresidential zones. Due to the disruption which nonconforming uses cause to the peace and tranquility of a residential zone, nonconforming uses therein should be eventually abolished or reduced to total conformity over time. *Page 7 
With respect to the nonconformance of Lot 10, the Board noted that the Petitioner is seeking to "convert the structure to a single-family residence[,] thereby bringing its use into conformance with the Ordinance." (Ex. 1.)
In an effort to develop real property in Providence in accordance with policy aims of the Code, the City of Providence enacted a lot merger provision, § 204.2, "Merger of Substandard Lots of Record." Section 204.2, in pertinent part, states that
 If two (2) or more contiguous lawfully established substandard lots of record, where one (1) or more of the lots is less that four thousand (4,000) square feet and are under the same ownership on or anytime after the effective date of this ordinance (October 21, 1991), such lots shall be considered to be one lot and undivided for the purpose of this ordinance, provided that the merger does not result in more than one principal building on the lot.
A "principal building" is defined by § 1000.35, "Building, Principal," as "[t]he primary building on a lot or a building that houses a principal use." A "principal use" is defined by § 1000.140, "Use, Principal," as "[t]he activity or function that actually takes place or is intended to take place on a lot." When §§ 204.2, 1000.35, and 1000.140 are read in conjunction and applied to the Petitioner's lots, there can be no merger of Lots 9 and 10. Lot 9 has a principal building, the dwelling house, the principal use of which is a residence. Lot 10 has its own principal building, the carriage house, the principal use of which was a livery, a place of assembly, or as a garage. Thus, as each lot has its own principal building and its own principal use, the two lots, though held in common ownership, do not merge by operation of law.
Upon a review of the Board's decision, this Court holds that the Board's finding that "the merger provision was not applicable to the Applicant and the subject lots" is not affected by error of law. (Ex. 1.) With respect to Lot 10, this Court notes that § 204.3, *Page 8 
"Permitted Uses of Substandard Lots of Record in R Zones," is controlling because the Property is located in the R-l Zone. Section 204.3 states the following:
 Any lawfully established lot which has less than the minimum area required for the zone in which it is located, may be used subject to the provisions of this ordinance and the following:
 (A) R Zones: A single-family house may be erected in any R Zone on any separately owned lot.
Therefore, subject to the Board's approval of a dimensional variance, the Petitioner was entitled to convert the carriage house on Lot 10 into a residence under § 204.3.[3]
To convert the carriage house into a residence, the Petitioner was required to obtain a dimensional variance from the setback requirements of § 304.1 because the carriage house does not lie within the mandated 3 foot and 4 foot side and rear yard setbacks. The criteria by which the Board evaluates such a request for a dimensional variance is found in § 902.3 of the Code.[4] Section 902.3, "Variances," reads as follows
 902.3. Variances. To authorize, upon application, in specific cases of hardship, variances in the application of the terms of this zoning ordinance, as provided below:
 (A) In granting a variance, the board shall require that evidence to the satisfaction of the following standards be entered into the record of the proceedings:
 1. That the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and *Page 9 
not to the general characteristics of the surrounding area; and is not due to a physical or economic disability of the applicant.
 2. That the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain.
 3. That the granting of the requested variance will not alter the general character of the surrounding area or impair the intent or purpose or this ordinance of the Comprehensive plan; and
 4. That the relief to be granted is the least relief necessary.
In Lischio v. Zoning Bd. of Review of the Town of North Kingstown,818 A.2d 685 (R.I. 2003), our Supreme Court reviewed the request for a dimensional variance according to § 45-24-41. The Court explained that, "in granting a dimensional variance, the hardship suffered by the owner of the subject property if the dimensional relief is not granted [must amount] to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the property." Id at 693 (quoting § 45-24-41 (d) (2)). The Court inLischio further held that the applicant "bears the burden of demonstrating to the satisfaction of the zoning board that there is evidentiary support for the proposition that there are no reasonable alternatives that allow the applicant to enjoy a legally permitted beneficial use of his or her property." Id at 693-94. (quoting vonBernuth v. Zoning Bd. of Review of New Shoreham, 770 A.2d 396, 401 (R.I. 2001)).
In order for the Board to grant the requested variance, evidence meeting the four criteria in § 902.3 (A) must have been presented to the Board. This Court individually reviews each requirement and the respective evidence before the Board.
Section 902.3 (A) (1) requires "[t]hat the hardship from which the applicant seeks relief is due to the unique characteristics of the subject land or structure and not to the general characteristics of the surrounding area; and is not due to a physical or economic *Page 10 
disability of the applicant." With respect to the unique characteristics of the property, there is evidence in the record which shows that the carriage house was built in the 1890s and that Lot 10 was created in 1937. Because Lot 10 and the carriage house both predate the Code and its setback provisions, they are unique in their legal nonconformity with respect to the current zoning ordinances. The Petitioner testified before this Court that "the building exists as it has for the past one hundred years. . . . The hardship results solely from the fact that the building is where it is. And you cannot use it without relief from the Board." (Dec. 14, 2007 Tr. at 26.) Furthermore, the Board noted that "the Applicant testified to the hardship that existed" and that he "has shown that the supposed hardship is not due to a physical or economic disability." (Ex. 1.) Because there was no evidence in the record that the Petitioner sought the variance to accommodate a physical or economic disability, and the request for dimensional relief is due to the unique characteristics of the lot, the Board had before it evidence that 902.3 (A) (1) was met.
Section 902.3 (A) (2) requires "that the hardship is not the result of any prior action of the applicant and does not result primarily from the desire of the applicant to realize greater financial gain." The Petitioner has satisfied this criterion because the record is devoid of any evidence that he has altered the structure or lot since his purchase on October 20, 2006. The Petitioner testified that he "didn't want to change it in any way, shape or form. [He] wanted it to look exactly as it did when it was built." (Feb. 27, 2007 Tr. at 18.) Therefore, the need for dimensional relief was not self-created. Additionally, the Petitioner testified that "[he] wants to have a conforming use in this zone." Id at 43. The evidence before the Board indicates that the Petitioner sought the dimensional variance to bring a nonconforming structure into conformance with the *Page 11 
Code. This evidence satisfies the Court that the dimensional variance was not sought "primarily from the desire of the applicant to realize greater financial gain." § 902.3 (A) (2). Therefore, this Court finds that the Board had before it evidence that § 902.3 (A) (2) was met.
Section 902.3 (A) (3) requires that the grant of a dimensional variance will "not alter the general character of the surrounding area or impair the intent or purpose of this ordinance or the Comprehensive Plan." With respect to the character of the surrounding area, board member Dan Varin noted during the March 27, 2007 Hearing that "[t]he surrounding properties are generally single families." (March 27, 2007 Tr. at 13.) Accordingly, this Court is satisfied that the dimensional variance will not alter the general character of the surrounding area. This Court also finds that the Board had evidence before it that the conversion of the carriage house is permissible under 902.3 (A) (3) because doing so would not impair the intent or purpose of the Comprehensive Plan of the Code. Section 204.3 provides that "[a] single-family house may be erected in any R Zone on any separately owned lot." Furthermore, § 201.1 states that "nonconforming uses . . . should be eventually abolished or reduced to total conformity over time." Therefore, the Board had before it evidence that the grant of a dimensional variance would "not alter the general character of the surrounding area or impair the intent or purpose" of the Code. See § 902.3 (A) (3).
Finally, Section 902.3 (A) (4) requires that the grant of a dimensional variance be predicated upon relief which is the "least relief necessary." This Court notes real estate expert Peter Scotti's hearing testimony. Mr. Scotti observed that
 [t]he Applicant wants to have a conforming use in this zone. He's not planning to change the structure. He's not *Page 12 
planning to expand the structure. He's merely planning to use the structure in accord with the zoning of a single-family zone. I don't see how doing that is going to have any impact on surrounding properties. He couldn't ask for any less relief than what he is asking for. (Feb. 27, 2007 Tr. at 43-44.)
According to Lischio, overall, the Petitioner was also required to show that the denial of a dimensional variance "amounts to more than a mere inconvenience, which means that there is no other reasonable alternative to enjoy a legally permitted beneficial use of the property." 818 A.2d at 693 (quoting § 45-24-41 (d) (2)). With respect to the inconvenience, the Chairman of the Board, John Kelly, remarked that denying the variance "amount[s] to a more than a mere inconvenience." (March 27, 2007 Tr. at 19.) Furthermore, this Court notes that the alternative to the conversion of the carriage house would require the demolition of the current structure and the placement of a new structure within the required setbacks for the side and rear yards. This alternative rises beyond the level of a "mere convenience" and also is the only way for the Petitioner to enjoy a "legally permitted use of the property." § 902.3 (B) (2). Without the grant of a dimensional variance, the only way for the Petitioner to enjoy such a permitted use would be to raze the carriage house and then build within the required setbacks.
The record demonstrates that the Petitioner presented reliable, probative, and substantial evidence to meet the requirements for the grant of a dimensional variance for Lot 10. Accordingly, the Board's decision, denying the variance, was affected by error of law and was clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. In light of the evidence in the entire record, the Board failed to apply the law of zoning and the Code to the evidence before it. See Zeilstra v. Barrington Zoning Bd" 417 A.2d 303,309 (R.I. 1980) (Rhode Island Supreme Court held that *Page 13 
zoning boards are given only the jurisdiction to apply zoning law and implement the zoning ordinances.). Accordingly, this Court reverses the decision of the Board.
 Conclusion
The Board's decision to deny Petitioner's request for a dimensional variance was in violation of ordinance provisions and was clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record. Substantial rights of the Petitioner have been prejudiced. The decision of the Board is hereby reversed and the matter is remanded to the Board for the grant of a dimensional variance in the Petitioner's favor. Counsel shall submit the appropriate judgment for entry.
[1] City of Providence Zoning Board of Review, Resolution No. 9196 provided: "WHEREAS, Thomas A. Palangio ("Applicant") and the owner of lot 10 on the Tax Assessor's Plat 86 (238 Doyle Avenue) located in a Residential R-l Zone and containing an approximate 1,836 square foot structure, filed an application to be relieved from Section 304 in the proposed conversion of the existing livery into a single-family dwelling, which is permitted in this R-l Zone." (Ex. 1.)
[2] The Petitioner has also alleged that the Board and other officials of the City of Providence committed several Constitutional violations. This Court declines to address those issues because there are prevailing state law grounds upon which to predicate the Petitioner's relief. SeeWhyte v. Sullivan, 119 R.I. 649, 382 A.2d 186 (1978).
[3] This Court reflects that the social planners of the Village of Euclid, Ohio would cringe today if they saw the instant zoning dispute at the intersection of Doyle Avenue and Morris Avenue. See Village ofEuclid v. Ambler Realty Co., 272 U.S. 365, 47 S. Ct. 114 (1926) (wherein the United States Supreme Court upheld the constitutionality of residential zoning ordinances). In Euclid, a realty company challenged the residential zoning ordinances for reducing the value of their property and destroying its marketability. The Court held in favor of Euclid due to the considerations for the public health, safety, residential congestion and pollution, and the general social welfare despite the fact that zoning ordinances effected a governmental taking. Thus, residential zoning ordinances are constitutional and play an important role in the systematic development of real property.
[4] Section 902.3 of the Code of Ordinances of the City of Providence, Rhode Island adopted the dimensional variance standard of G.L. (1956) § 45-24-41, "Zoning Ordinances." *Page 1