DECISION
This matter is before the Court on appeal from a Decision of the Town of Middletown Zoning Board of Review (Board). The Decision sustained an appeal of the Building Official's determination that a legal nonconforming use existed on the subject property. Jurisdiction is pursuant to G.L. 1956 § 45-25-69.
 FACTS AND TRAVEL
The subject property, described as Tax Assessor's Plat 114 Lot 219, is located at 613 Aquidneck Avenue, Middletown, Rhode Island and situated in an R-20A (Residential-Traffic sensitive) zone. On February 17, 2001, John Patenaude (Patenaude), entered into a Purchase and Sales Agreement with Larry Alfosin and Rita Alfosin for the purchase of the Lot 219. Patenaude intended to use the property as a car dealership, a use not permitted in an R-20A zone. Pursuant to Middletown Zoning Ordinance § 305, Patenaude requested a certificate of zoning compliance from the Building Official declaring that the use of Lot 219 as a car dealership was a legal nonconforming use. On March 26, 2001, Jack Maloney (Maloney), the Building Official, issued a certificate of compliance stating that a car dealership would be allowed on the property as a continuance of a pre-existing nonconforming use. (Exhibit A.) Patenaude then purchased Lot 219 on April 6, 2001 and began improvements thereon.
Frank Freitas and Michelle Freitas, abutting landowners aggrieved by the decision of the Building Official, appealed the decision to the Board claiming that the prior legal nonconforming use had been abandoned. It was undisputed that a legal nonconforming use for auto sales existed on the property prior to 1979. The sole issue before the Board was whether the legal nonconforming use had been abandoned. The Board conducted advertised public hearings on July 24, 2001, and August 28, 2001.
Larry Alofsin (Alofsin) owned Lot 219 from at least 1979 until he sold the property to Patenuade. Alofsin testified that he had stored cars on the lot continually since 1979, and although no one worked on the premises, Alofsin claimed to have sold a couple of cars each year from the lot. (7/24/01 Tr. at 59.) According to Alofsin, he continuously maintained a used car dealership license for Lot 219. (7/24/01 Tr. at 41.) Though Alofsin told the Board that he would produce the license for Lot 219, he presented the Board only with a license for a dealership located at 114 West Main Road, Middletown, Rhode Island. (7/24/01 Tr. at 42; 8/28/01 Tr. at 8,9.) Alofsin claimed that he remembered leasing the lot to several tenants who sold cars throughout the years. (7/24/01 Tr. at 44.) When questioned about his 1979 application for a use variance,[1] Alofsin could not recall the details of the hearing, but asserted that the light industrial use for which he requested the variance had never been implemented. (7/24/01 Tr. at 40, 49, 51.) Alofsin also admitted that in 1994, he petitioned the zoning board for an exception to use Lot 219 for an appliance repair business. (7/24/01 Tr. at 56; Exhibit F.) The 1994 petition was subsequently withdrawn. Alofsin explained that he was leasing a small portion of the premises for the appliance repair business,[2] but maintained that he continued to use Lot 219 as a car dealership. (7/24/01 Tr. at 57.) Alofsin was unable to explain why the 1994 petition bearing his signature listed the present use of the premises as "None." (7/24/01 Tr. at 57; Exhibit F.)
Frank Freitas (Freitas), purchased abutting property at 28 Newman Road, Middletown, Rhode Island in 1978. (8/28/01 Tr. at 19.) According to Freitas, in 1979, Alofsin applied for a use variance to convert the legal nonconforming use of the property for auto sales to a light industrial use. (8/28/01 Tr. at 12.) During the 1979 hearing, Freitas heard Alofsin testify that the property could no longer be used as a car dealership largely because of the location and that without the use variance, Alofsin would have no use for the property. (8/28/01 Tr. at 12.) The 1979 decision of the board granting the use variance was submitted as an exhibit for the Board. (Exhibit C.) Freitas further related that after the board granted the use variance, the car lot sign and all the cars were removed. (8/28/01 Tr. at 13.) Freitas observed the installation of a new utility pole and transformers and the delivery of "a huge injection molding machine" at Lot 219. (8/28/01 Tr. at 13.) Toward the end of 1979, the light industrial use had been vacated. Thereafter, the property was put to various uses and at times, the property appeared vacant. (8/28/01 Tr. at 14, 15, 20.)
The Board heard similar testimony from Rosalind Pascoe (Pascoe), an abutter who lives at 625 Aquidneck Avenue, Middletown, Rhode Island. According to Pascoe, the property had been used sporadically throughout the past eighteen years for various purposes. (7/24/01 Tr. at 25.) Pascoe claimed that only "junk cars" were left on the property and that during the years electricity was not maintained on the lot. (7/24/01 Tr. at 28.) From her personal observations, Pascoe estimated that the property had not been utilized as a car dealership in at least eight years. (7/24/01 Tr. at 28.) Additionally, Jesse Perry (Perry), an abutter owning property at 608 Aquidneck Avenue for the past 50 years, submitted his affidavit to the Board wherein he attested that Lot 219 had not been used for auto sales "for many, many years." (Exhibit E.) Perry had also attended the 1979 hearing on the use variance application and observed certain changes to the property in preparation for the light industrial use. (Exhibit E.)
Based on the testimony and evidence before it, the Board issued a Decision on November 21, 2001, sustaining the appeal. The Board credited the testimony that the used car lot had been removed in 1979 and a new utility pole and heavy machinery installed on the property in preparation for the light industrial use. (Decision at ¶ 5.) The Board found that while cars on the lot may have occasionally been sold, a used car business had not existed on the property after 1979 despite Alofsin's claims to the contrary. (Decision at ¶ 7, 9.) The Board determined that Alofsin's 1979 application for the use variance and the subsequent moving of certain equipment and material onto the property in preparation for the light industrial use constituted overt acts evidencing that Alofsin no longer retained an interest in continuing the nonconforming use. (Decision at ¶ 10.) The Board concluded that Alofsin had abandoned his legal nonconforming use in 1979 and reversed the decision of the Building Official.
Patenaude timely filed an appeal with proper notice. Thereafter, 114 West Main Road Corporation (114 West Main) filed a motion to intervene which was granted by this Court. On appeal, 114 West Main argues that the Board's Decision is not supported by substantial evidence. Additionally, 114 West Main contends that the abutters are barred by laches because they failed to challenge the use of the property in 1979.
 STANDARD OF REVIEW
General Laws 1956 § 45-24-69 authorizes this Court to review a decision of a zoning board. Section 45-24-69(d) provides in pertinent part:
 "(d) The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Pursuant to § 45-24-69(d), issues of credibility and the weight of the evidence are within the purview of the zoning board and will not be disturbed by the Superior Court on review. Kaveny v.Zoning Bd. of Review, 875 A.2d 1, 7 (R.I. 2005). This Court is limited to an examination of the entire record to determine whether the board's findings of fact are supported by substantial evidence. Mill Realty Assocs. v. Crowe, 841 A.2d 668, 672 (R.I. 2004). "Substantial evidence has been defined `as more than a scintilla but less than a preponderance.'" Id. (quotingApostolou v. Genovesi, 120 R.I. 501, 508, 388 A.2d 824-25
(1978)). Thus, if relevant, competent evidence that a reasonable person might accept in support of a conclusion exists, then the decision of the zoning board must be affirmed. Id.
 ZONING BOARD DECISION
The Board found that while the property was owned by Alofsin, the prior nonconforming use had been abandoned as evidenced by overt acts. The right to continue a legal nonconforming use is provided by statute. § 45-24-39(b). However, "[a] zoning ordinance may provide that, if a nonconforming use is abandoned, it may not be reestablished." § 45-24-39(c). Under the Middletown Zoning Ordinance, abandonment forfeits the legal nonconforming use. Middletown Zoning Ordinance § 801(A).
 "Abandonment of a nonconforming use shall consist of some overt act or failure to act which would lead one to believe that the owner of the nonconforming use neither claims nor retains any interest in continuing the nonconforming use unless the owner can demonstrate an intent not to abandon the use. An involuntary interruption of nonconforming use, such as by fire and natural catastrophe, does not establish the intent to abandon the nonconforming use. However, if any nonconforming use is halted for a period of six (6) months, or eighteen (18) months in three (3) years, the owner of the nonconforming use will be presumed to have abandoned the nonconforming use, unless that presumption is rebutted by the presentation of sufficient evidence of intent not to abandon the use." Middletown Zoning Ordinance § 801(B); see also § 45-24-39(c).
Whether abandonment has occurred is a factual question with the burden of proof on the party asserting abandonment. WashingtonArcade Associates v. Zoning Bd. of Review, 528 A.2d 736, 738
(R.I. 1987) (citing Town of Coventry v. Glickman, 429 A.2d 440,443 (R.I. 1981)). "[A] mere discontinuance of a nonconforming use for a period does not constitute abandonment of the use." Townof West Greenwich v. A. Cardi Realty Assocs., 786 A.2d 354, 360
(R.I. 2001). Abandonment requires "an intention to relinquish . . . a known right . . . evidenced by an overt act or a failure to act sufficient to support an implication of such intent."A.T.G., Inc. v. Zoning Bd. of Review, 113 R.I. 458, 463,322 A.2d 294, 297 (1974); 4 Arden H. Rathkopf, The Law of Zoning andPlanning § 74:2 (2005).
On appeal, 114 West Main argues that the Board acted arbitrarily in finding that the nonconforming use had been abandoned merely because of the 1979 application for a use variance. Relying on Soltis v. Tasir, 469 A.2d 1157 (Pa.Commw. 1984), 114 West Main argues that the 1979 use variance was irrelevant given the testimony that the light industrial use was never effectuated. The court in Soltis held that, although approval had been sought and given for conversion to a conforming use, the nonconforming use at issue had not been abandoned because the substantial evidence supported a finding that the nonconforming use had continued throughout the years.469 A.2d at 1159. According to 114 West Main, there was no other evidence, besides the 1979 application, to support a finding of intent to abandon the nonconforming use. This contention overlooks substantial evidence in the whole record.
It was undisputed that Alofsin applied for and received a use variance for the property in 1979 to convert the use from the nonconforming auto sales to a light industrial use. See Duffyv. Milder, No. 2004-256-A., slip op. at 17 (R.I., filed April 14, 2006) ("[T]he Malms abandoned any claim to a prior nonconforming use when they requested a zone changed to accommodate their desire to develop their property into condominiums."). Moreover, competent evidence presented indicated that equipment and materials had been placed on the property in preparation for the light industrial use, but that the preparation and attempt to implement the use was discontinued in late 1979. See Faith Presbyterian Church v. Zoning HearingBd., 538 A.2d 135, 136-137 (Pa.Commw. 1988) (holding that obtaining a use variance and altering the property evidenced an intent to abandon even though the use authorized by the variance was not implemented).
Furthermore, the Board heard testimony from two abutters that the auto sales nonconforming use was not re-established on the property after the attempted light industrial use was discontinued. Both Freitas and Pascoe testified that when the property was not vacant, various uses had existed none of which included an operational car lot. Though Alofsin claimed that he had no intention of abandoning the nonconforming use, he was unable to explain why, in the past, he had represented to the board through both the 1979 and 1994 applications for zoning relief, that the property was not being used or capable of use for auto sales. Furthermore, Alofsin was unable to produce a valid dealership license for the property after representing to the Board that he had maintained such a license. See Dawson v.Bd. of Appeals, 469 N.E.2d 509, 509 (Mass.App. 1984) ("There was an abandonment of the use of the property as a nursing home when the license to maintain a nursing home was surrendered."). Accordingly, the Board had before it relevant, competent evidence to support the finding of overt acts which would lead a reasonable person to conclude that the owner no longer retained an interest in the nonconforming use.
 LACHES
Additionally, 114 West Main contends that the abutters are barred by the doctrine of laches from challenging the nonconforming use. "Laches is an equitable defense that precludes a lawsuit by a plaintiff who has negligently sat on his or her rights to the detriment of a defendant." O'Reilly v. Town ofGlocester, 621 A.2d 697, 702 (R.I. 1993). The defense of laches requires (1) negligence on the part of the plaintiff that delays the prosecution of a case and (2) prejudice to the defendant as a result of the delay. Id. In the context of appeals to a zoning board, the doctrine of laches has been applied in situations where persons aggrieved by a decision of a building official do not appeal to the zoning board within a reasonable time, and in the interim, significant construction and substantial expenses are incurred in reliance on the action of the building official.Elmcrest Realty Co., Inc. v. Zoning Bd. of Review, 78 R.I. 432,434-436, 82 A.2d 846, 847-848 (1951) (remonstrants barred from appeal of a building permit where the remonstrants delayed three months while the applicant expended substantial sums and nearly completed construction).
The Middletown Zoning Ordinance § 311 allows an aggrieved party to appeal a decision of the Building Official within a reasonable time of the decision. In this case, the certificate of compliance was issued on March 26, 2001. The Building Official is not required to file or record the certificate, but the Building Official must furnish copies to anyone upon request. Middletown Zoning Ordinance § 305(D). Patenaude purchased the property on April 6, 2001 and began making improvements to the lot in reliance on the certificate of compliance. Thereafter, on May 3, 2001, the Freitases received a copy of the certificate of compliance and filed a notice of appeal with the Board on May 14, 2006. Neither Patenaude before the Board nor 114 West Main in the instant appeal challenges the timeliness of the appeal taken by the Frietas from the decision of the Building Official.
Instead, 114 West Main contends that the Freitases' delay in challenging the nonconforming use spans the entire period from 1979 until 2001. In support of this contention, 114 West Main relies on Ricciardi v. Town of North Providence, wherein the court held that abutters were guilty of laches because they had delayed for nine months before challenging a zoning amendment while the land owner spent substantial sums in reliance on the amendment. 107 R.I. 361, 363, 267 A.2d 738, 739-740 (R.I. 1970). Unlike the procedural posture of Ricciardi, the Freitases did not file an untimely complaint in Superior Court; they appealed a decision of the Building Official in accordance with the Middletown Zoning Ordinance. Furthermore, 114 West Main's laches argument is factually unsupported. The Board found that the property had been vacant for about half the time since 1979 and that during the other times various sporadic uses were implemented on the property. (Decision at ¶ 7.) This finding was supported by substantial evidence in the whole record. The abutting land owners could not challenge a nonconforming use when that use was not continually operated. In fact, upon observing Patenaude's changes to the property for the implementation of the used car sales business, the Freitases filed the appeal of the Building Official's decision. Thus, the defense of laches is inapplicable to the case at bar.
 CONCLUSION
After a review of the entire record, this Court finds that the Decision of the Board, sustaining the appeal of the decision of the Building Official, is not clearly erroneous and is supported by substantial evidence. Furthermore, the Board's Decision sets forth sufficient factual findings in support of the legal conclusion. The Decision was not made upon unlawful procedure. Substantial rights of the appellant have not been prejudiced. Therefore, the Decision of the Board is affirmed.
Counsel shall submit the appropriate judgment for entry.
[1] At the beginning of the July 24th hearing, counsel for the Freitas introduced as Exhibit C a copy of a 1979 decision of the zoning board which granted Alofsin's application for a use variance to convert Lot 219 from auto sales to a light industrial use. (7/24/01 Tr. at 12.) In association with the 1979 decision, the Board accepted into evidence an electrical permit application for the property, dated October 19, 1979, which listed the previous use of the property as auto sales and the propose use as an extrusion shop. (Exhibit D.)
[2] Counsel for the Freitas submitted a coupon for JET Used Appliances Sales and Services located at 613 Aquidneck Avenue that had appeared in a 1994 telephone directory. (Exhibit G.)