Anthony **PITOCCO** et al.

v.

Richard **HARRINGTON** et al.

No. 96–555–Appeal.

Supreme Court of Rhode Island.

Feb. 20, 1998.

Raymond A. LaFazia, Providence, for Plaintiff.

Michael DeSisto, Providence, for Defendant.

1. The defendant town council members are as follows: A. Edward Pearson, Colette Matarese,

Before BOURCIER, FLANDERS and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

This action for damages arose out of a local building official's wrongful denial of a building permit and his unilateral imposition of fines and a lien against the plaintiffs' property for their alleged violations of a zoning ordinance. The plaintiffs, Anthony and Barbara Pitocco, appeal from a Superior Court order dismissing certain claims against the defendant building official, Richard Harrington (Harrington), and dismissing the defendant town of Foster town council members in their individual capacities.[1] The plaintiffs also appeal from a Superior Court order denying their motion for a new trial. For the reasons explained below, we reverse these rulings and remand for a new trial.

The parties were ordered to show cause before a panel of this court why the appeal should not be summarily decided. After reviewing their legal memoranda and considering their respective contentions, we conclude that no cause has been shown and that the appeal can be decided at this time.

The plaintiffs are homeowners in the town of Foster. They alleged that Harrington wrongfully denied their application for a building permit to rebuild and repair their fire-ravaged home. At trial, plaintiffs proved that Harrington had denied their building permit application for an improper reason: namely, his belief that their bringing heavy construction equipment onto their property to rebuild their home constituted a zoning-ordinance violation that precluded issuance of the building permit. They also alleged that by denying them a building permit, by improperly assessing $100-per-day zoning fines against them for having the construction equipment on their property, and by recording a putative lien against the record title to their real estate for the amount of the zoning fines, Harrington deprived them of their property rights without due process of law

Raymond Capobianco, Frances Gaft, and Richard Ruggieri.

and in violation of 42 U.S.C. § 1983. They sought damages based upon increased construction costs resulting from the delay these actions caused in rebuilding their home.

At trial Anthony Pitocco (Pitocco) testified that on November 14, 1990, his house burned down. In January or February of 1991 he decided to rebuild. To that end, on May 22, 1991, he purchased a backhoe. But on that same day, the town building official, Harrington, received a complaint from one of the Pitoccos' neighbors that plaintiffs were keeping heavy construction equipment on their property. The next day Harrington visited the Pitoccos' home and observed such equipment there, including a construction trailer, a bulldozer, a dumptruck, and the backhoe. Harrington told Pitocco to remove the equipment, claiming it was in violation of the town's zoning ordinance to have it there. The following day Pitocco received a cease-and-desist order from Harrington.

Pitocco went to see Harrington the following week at his office in the town hall. He stated that he was seeking a building permit and that he also wanted to discuss the cease-and-desist order with Harrington. Pitocco brought his plans and specifications for his new home with him but Harrington refused to look at them. Harrington told him he would not issue him a building permit unless Pitocco first removed the equipment from his property. Pitocco explained that he could not rebuild his house without the equipment.

In June of 1991 Pitocco tried to persuade Harrington to reconsider, but Harrington again refused to issue him a building permit. Finally, in mid-July of 1991 Pitocco presented Harrington with a written application for a building permit. Harrington again refused to grant the permit because he considered plaintiffs to have an active zoning violation on their property and, pursuant to the town's practice, he would not issue a permit in such circumstances. But this time he wrote on the application, "[A]pplication denied," and signed it. Thereafter, Pitocco filed this lawsuit. Meanwhile, Harrington unilaterally assessed a $100–per–day fine against Pitocco for each day the equipment remained on his property and caused documents showing the

existence and amounts of the zoning fines to be recorded against the Pitoccos' record title to the property in the town's land evidence records.[2] However, Harrington admitted that he failed to notify plaintiffs that he had filed these documents against their record title. Moreover, the town never instituted a legal action against the Pitoccos under G.L. 1956 §§ 12–3–1 and 45–24–6 to establish any alleged zoning violations, notwithstanding that such an action was the exclusive method to establish and collect fines against an alleged zoning violator. *See Zeilstra v. Barrington Zoning Board of Review*, 417 A.2d 303, 309–10 (R.I.1980) (town council cannot grant jurisdiction to the zoning board to initiate proceedings to enforce zoning violations, nor can it designate the building official as the proper party to bring zoning violation actions); *Town of Glocester v. Tillinghast*, 416 A.2d 1178, 1180 (R.I.1980) (jurisdiction for claims seeking fines for alleged zoning ordinance violations lies in district court).

After he commenced this action in July, Pitocco attended an August hearing at the zoning board of review. At the hearing Harrington finally agreed to issue plaintiffs a building permit, but he also handed Pitocco a citation notifying him of a town council hearing later in the week. According to Pitocco, the following day Harrington finally gave him the building permit. Harrington said that he advised Pitocco at that time that a lien had been placed on his property for the unpaid fines. Pitocco testified that he had never even had a hearing on the alleged zoning violations, much less had he ever been adjudicated guilty of such charges.

On August 22 and again on September 5, Pitocco appeared before the town council as summoned. The council members refused to vacate the $5,900 zoning fine but suspended it on the condition that plaintiffs return to the zoning board and try to work out a solution to the fines with that body. Meanwhile, the Pitoccos' Superior Court suit was reached for trial. In presenting his case, Pitocco alleged that Harrington had acted negligently in denying the building permit and in assessing fines, and had thereby de-

---

**2.** The fines, calculated from June 23rd, eventual-   ly amounted to $5,900.

prived him of his federal constitutional rights to due process. In addition, Pitocco accused the town council of similarly depriving him of his due process rights by its actions with respect to the illegal fines. Pitocco argued that because he could not obtain a building permit, he was delayed in building his new home, thereby costing him an additional $72,000 in increased construction costs. At the conclusion of plaintiffs' case, defendants moved to dismiss plaintiffs' 42 U.S.C. § 1983 claims against Harrington and the town council members in their individual capacities. The trial justice denied the motion to dismiss their claim under § 1983 and denied defendants' motion to dismiss Harrington in his individual capacity. But he granted defendants' dismissal motion with regard to the individual town council members.

The defendants then called Harrington to the stand. He conceded, upon reflection, that he had made a mistake in denying plaintiffs' application for a building permit. He stated that he had done so because he believed it to be the town's practice that if anyone had an outstanding zoning violation upon applying for a building permit, the permit was not to be issued.

At the conclusion of the trial, the trial justice granted defendants' motion to dismiss the § 1983 claims against Harrington and dismissed all claims against Harrington individually. Thus, the only claim submitted to the jury was a common-law-negligence claim against Harrington in his official capacity as the town building official. Thereafter, the jury returned a verdict for plaintiffs but only awarded damages in the amount of $273.36. A judgment entered in that amount plus interest for a total award of $438.16. The plaintiffs then filed a motion for a new trial, which was heard and denied by the trial justice.

On appeal, plaintiffs first argue that the trial justice erred in dismissing their § 1983 claims. The plaintiffs contend that the fines imposed by Harrington and confirmed by the town council members, as well as Harrington's arbitrary denial of a building permit and placement of a putative lien on plaintiffs' record title to their property, violated both their procedural and their substantive due-process rights. They allege that the evidence they presented at trial showed that these acts took place under color of state authority and deprived them of their property without due process. The plaintiffs also posit that the trial justice erroneously relied upon *Jolicoeur Furniture Co. v. Baldelli*, 653 A.2d 740 (R.I.1995), and *Creative Environments, Inc. v. Estabrook*, 680 F.2d 822 (1st Cir.1982), in granting defendants' motion. We agree and hold that the trial justice erred in granting judgment as a matter of law with respect to plaintiffs' 42 U.S.C. § 1983 claims and in denying plaintiffs' motion for a new trial.

In *Jolicoeur* the plaintiffs brought an action against the city of Woonsocket and city officials claiming inter alia that the defendants had violated 42 U.S.C. § 1983. There the plaintiffs alleged that the defendants had taken their property without just compensation in violation of the State and Federal Constitutions when the city breached a contract to transfer real estate to plaintiffs for a new furniture store. This court concluded that the plaintiffs did not have claims that were either actionable or compensable under federal law because they had merely stated private common-law claims for breach of and interference with their municipal land purchase contract.

But in *L.A. Ray Realty v. Town Council of Cumberland*, 698 A.2d 202 (R.I.1997), we distinguished *Jolicoeur* on the grounds that the municipal defendants' breach of and interference with the *Jolicoeur* plaintiffs' contract rights to purchase real estate from the municipality did not in that case deprive the plaintiffs of any constitutionally protected property rights because they had viable common-law causes of action to redress these wrongs. *Id.* at 213. However, in *L.A. Ray Realty* we held inter alia that the plaintiff property owners in that case had established § 1983 due-process violations against town officials who had arbitrarily denied their request for subdivision approval by wrongly applying an invalid legal requirement (a greater minimum lot size) to block their subdivision application. *Id.* Because the *L.A. Ray Realty* plaintiffs were entitled to approval of the permit they sought, we held

that "this entitlement amounted to a constitutionally protected property interest." *Id.*

■ In contrast to the *Jolicoeur* plaintiffs, but like the plaintiffs in *L.A. Ray Realty,* plaintiffs in this case had no contract with the municipality and thus no adequate common-law claims to remedy their losses based upon an alleged contract breach. If, as Harrington's testimony suggested, the town's practice was to deny building permits on the basis of the building official's unilateral determination that an applicant was a zoning violator, to assess fines against alleged violators without taking them to court, and to file purported liens against the alleged violators' record title to their property, then plaintiffs' § 1983 claims should not have been taken from the jury pursuant to a Super. R. Civ. P. Rule 50 motion.

> "A regulation that takes property violates the substantive due process clause if it is arbitrary, discriminatory, or irrelevant to a legislative policy. * * * Furthermore, as to substantive due process claims, 'the constitutional violation actionable under § 1983 is complete when the wrongful action is taken.' * * * Moreover, substantive due process prevents * * * legally irrational action that is not keyed to a legitimate state interest." *L.A. Ray Realty,* 698 A.2d at 211 (quoting *Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed.2d 100, 114 (1990)).

■ In Rhode Island the local building official is a municipal administrative officer who is bound to follow the zoning ordinance and applicable statutory provisions pursuant to which he or she is authorized to act. *See generally* G.L.1956 § 23–27.3–107.1. If a building permit application shows that the proposed construction conforms to the building code and to other applicable laws, the applicant is entitled to the permit. *See* § .23–27.3–114.1(a) ("If the building official is satisfied that the proposed work conforms to the requirements of this [building] code and all laws applicable thereto, he or she shall issue a permit."). Thus, if a building permit is denied upon a ground other than one that comes within the scope of the official's authority, it constitutes an arbitrary act because "[w]hen presented with petitioner's ap-

plication for a building permit, the inspector had no authority whatsoever 'other than to determine that the proposed construction conform[ed] precisely to the terms of the pertinent provisions of the zoning ordinance.'" *Zeilstra,* 417 A.2d at 308 (quoting *Arc–Lan Co. v. Zoning Board of Review of North Providence,* 106 R.I. 474, 476, 261 A.2d 280, 282 (1970)). And the mere pendency of legal proceedings concerning the applicant's alleged zoning violations is irrelevant to the landowner's right to a building permit. *Cf. Milstein v. O'Neill,* 25 N.Y.2d 757, 303 N.Y.S.2d 512, 513, 250 N.E.2d 573, 574 (1969) (requiring permit to be granted if it is otherwise properly supported despite pendency of legal proceedings challenging the applicant's compliance with zoning laws).

In this case the trial justice did not have the benefit of our recent *L.A. Ray Realty* decision when he concluded that evidence concerning the town officials' conduct did not set forth viable § 1983 claims. The trial justice stated:

> "What Mr. and Mrs. Pitocco have in this case is a private right and in this case, in this Court's opinion, it's going to be decided on a strictly negligence basis with the question put squarely before the jury on whether Mr. Harrington's error rises to the level of negligence which was the proximate cause of damages, delay or whatever problems the Pitoccos encountered as a result of Mr. Harrington's actions and whether those actions come within the public duty doctrine or fall within one or the other or both of the exceptions to the public duty doctrine. As a result, I'm dismissing Mr. Harrington out as an individual, and I'm removing from the consideration of the jury, noting Plaintiffs' exception thereto, the action relating to Section 1983."

It is well settled that when reviewing the decision of a trial justice on a motion for judgment as a matter of law, this court, like the trial justice, must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable and legitimate inferences that may properly be drawn from the evidence, without weighing the evidence or assessing

the credibility of the witnesses. *Haxton's of Riverside, Inc. v. Windmill Realty, Inc.*, 488 A.2d 723, 725 (R.I.1985). If there is evidence supporting the nonmoving party or evidence on which reasonable minds could differ, the jury is entitled to decide the facts and the motion should be denied. *Lutz Engineering Co. v. Industrial Louvers, Inc.*, 585 A.2d 631, 635 (R.I.1991).

We hold that in this case plaintiffs established a prima facie case under § 1983 that they were deprived of their constitutionally protected due-process rights. As the United States Supreme Court stated in *Nollan v. California Coastal Commission*, 483 U.S. 825, 834 n. 2, 107 S.Ct. 3141, 3147 n. 2, 97 L.Ed.2d 677, 687 n. 2 (1987), "the right to build on one's property—even though its exercise can be subjected to legitimate permitting requirements—cannot remotely be described as a 'governmental benefit' "—in other words it is not merely a privilege that can be arbitrarily withheld. When plaintiffs introduced evidence that defendant Harrington unilaterally (1) adjudged plaintiffs to be zoning violators, (2) assessed thousands of dollars in fines against them without a hearing or other court proceedings, (3) placed a purported lien against the record title to their property, and (4) arbitrarily refused to issue them a building permit pursuant to town policy based solely on his improper adjudication of them as zoning violators, plaintiffs presented a prima facie case that he had deprived them of the use of their property in violation of their federal guaranty to due process of law. As a result the trial justice erred in granting judgment as a matter of law with respect to plaintiffs' § 1983 claims against defendant Harrington.

Similarly, viewing the evidence presented most favorably to plaintiffs, the trial justice should not have granted judgment as a matter of law in favor of defendant town council members. In addition to their appointment of Harrington as building official and zoning inspector, the town council purported to convene a hearing concerning the zoning fines assessed by Harrington against plaintiffs. At the conclusion of this hearing and notwithstanding their complete lack of authority to do so, *see Zeilstra*, 417 A.2d at 309 ("[t]he statutes * * * confer exclusive jurisdiction of these matters upon the courts"), the council members purported to ratify and confirm the amount and existence of such fines (though they agreed to suspend them on the condition that plaintiffs appear before the zoning board and take up the fines with that body). But the council had no business holding hearings to enforce the zoning ordinance or referring plaintiffs back to the zoning board or taking any such action with respect to the fines purportedly assessed against plaintiffs. *Id.* Construing this evidence most favorably to plaintiffs, we conclude that defendant town council officials acted to confirm the unauthorized actions of the town's building official vis-à-vis plaintiffs when they had no legal authority or jurisdiction to intervene in this matter and that, in doing so, they displayed a deliberate indifference to the building official's illegal conduct. *See, e.g., Polenz v. Parrott*, 883 F.2d 551, 558 (7th Cir.1989) (section 1983 claim cognizable where plaintiff alleged arbitrary denial of occupancy permit); *Bateson v. Geisse*, 857 F.2d 1300, 1303 (9th Cir.1988) (arbitrary denial of building permit violated substantive due process where applicant satisfied all permit requirements); *Scott v. Greenville County*, 716 F.2d 1409, 1421 (4th Cir.1983) (county's arbitrary refusal to issue building permit to property owner held to violate due process).

Next plaintiffs contend that the trial justice erred in denying their motion for a new trial. They suggest that the damages awarded are "grossly inadequate" and contrary to the evidence presented. The standard applied by a trial justice in considering a motion for a new trial is well settled. In *Izen v. Winoker*, 589 A.2d 824, 828–29 (R.I. 1991), this court stated:

"On the motion for new trial the trial justice must evaluate the evidence in the light of his or her charge to the jury and exercise his or her independent judgment regarding the weight of the evidence and the credibility of the witnesses. In so doing, he or she assumes the role of a super juror and, having done so, should set the verdict aside when in his or her judgment it is clearly wrong because it fails to

respond truly to the merits of the controversy, fails to administer substantial justice, and is against the fair weight of the evidence. By the same token the trial justice should allow the verdict to stand if the evidence is evenly balanced or is such that different minds could fairly come to different conclusions."

When this court reviews a trial justice's decision on a motion for new trial, his or her decision will be accorded great weight and will only be disturbed if it can be shown that the trial justice overlooked or misconceived material and relevant evidence or was otherwise clearly wrong. *Id.* at 829.

In this case, the trial justice opined that it was of no consequence whether he thought the amount of damages awarded to the plaintiffs was too low, so long as there was some evidence to sustain the jury's verdict. Although the trial justice stated that plaintiffs failed to prove damages beyond the amount awarded by the jurors, his conclusion appears to have been influenced by his use of the wrong standard in reviewing the evidence and the jury's damages award. As the trial justice stated:

> "The real problem in this case, is the amount of damages awarded the plaintiffs; a very low amount, as both of you know. * * * And, again, it doesn't matter under the law of our cases whether or not I thought the amount was too low as long as there was some evidence to sustain the jury's verdict and their finding. I have to sustain their verdict in this case and the amount awarded."

But that was not the correct standard for the trial justice to apply on a motion for a new trial. As indicated above, the trial justice must exercise his or her independent judgment regarding the weight of the evidence and should set the verdict aside if it fails to respond truly to the merits of the controversy, fails to administer substantial justice, and is against the fair weight of the evidence— even when there is some evidence to support the jury's verdict.

Based upon the foregoing, the plaintiffs' appeal is sustained, the trial justice's orders granting judgment as a matter of law and denying a new-trial motion are reversed, and the papers in this case shall be remanded to the Superior Court for a new trial.

WEISBERGER, C.J., and LEDERBERG, J., did not participate.