DECISION
Before the Court is an administrative appeal from the Department of Labor and Training (DLT), finding that the Plaintiff, Baldwin Farms Inc., (Plaintiff) must pay the prevailing wage to its workers, plus interest and a civil penalty, pursuant to G.L. 1956 § 37-13-1 etseq.[1] The Plaintiff filed a timely appeal. Jurisdiction is pursuant to G.L. 1956 §§ 37-13-15(c) and 42-35-15.
 I Facts and Travel
The Plaintiff was the lowest bidder for a contract with the Rhode Island Resource and Recovery Corporation (RIRRC). The Plaintiff entered into an agreement with Defendant in December of 2003 until September of 2004, for $300,000, with the option for two, one year renewals. Thereafter, RIRRC and Plaintiff renewed the agreement until some time in February 2005, for an additional $115,000. The parties agreed on the increase in price because they encountered more work than previously anticipated in the original agreement. *Page 2 
The Plaintiff became involved in this particular agreement because the RIRRC sent out Information for Bids (IFB) titled "Hay Bale Installation and Erosion Control." The minimum equipment listed in the IFB consisted of a backhoe, excavator, dozer, loader, dump truck, and vibratory compactor. (IFB at 3.) The RIRRC also held a pre-bid meeting at which bidders could ask any questions to clarify the information in the IFB. At that meeting, a representative from the RIRRC was available to answer questions. The Plaintiff alleges he and another person asked if prevailing wages were going to apply to this project, and the representative stated that this was a maintenance project only. (Tr. of Hearing at 41, Dec 15, 2006.) Baldwin Farms went forward with the agreement with the RIRRC, paying its employees a wage other than the prevailing wage.
Baldwin Farms worked pursuant to the necessary specifications in the IFB. These included but were not limited to:
 • Sediment pond dredging
 • Removal of sediment from swales and drainage benches
 • Restabalization of swales and drainage benches
 • Removal of old haybales, sediment, waste, or any other miscellaneous debris
 • Regrading in areas where old haybales exist prior to installation of new haybales
 • Installation of erosion blankets and/or mulch, Miscellaneous re-grading of areas for drainage purposes
 • Installation and removal of turbidity curtains (silt booms)
 • Slope stabilization
 • Supply and installation of rip rap, if necessary
 • Cleaning and drainage of draining culverts
 • Resetting and /or replacement of temporary erosion controls
 • Miscellaneous erosion repairs and control installation. (IFB at 2.)
In February of 2005, Daniel Crosby, an employee of Baldwin Farms, filed a complaint in the prevailing wages unit of the DLT. He claimed he was not being paid the prevailing wage and this project fell into the "prevailing wage" category. *Page 3 
In response to the complaint, Baldwin Farms requested information to clarify that this was not a prevailing wage project. William Anderson, Engineering Manager of the RIRRC, responded in a letter stating that this was a maintenance project only and not subject to the prevailing wage. (Letter to Baldwin Ex. D at 1.) However, this letter was substantially identical to the internal memo that was sent to Mr. Stern, the executive counsel to the Department of Administration, by a law student. Mr. Stern had requested that the law student do some research to find out if this project fell under the prevailing wage statute.
Ms. Lisa Tirocchi, the Prevailing Wage Division Investigator, concluded that this project fell into the prevailing wage category and that the Plaintiff failed to pay the prevailing wage. (Tr. at 18-19, Dec. 15, 2006.) She then took into account the employees' description of their work and determined the difference between the wage the employees had been paid and the prevailing wage, plus the required 12% interest, set forth in G.L. 1956 § 37-13-14.1(a).
The Plaintiff appealed this decision by the Prevailing Wage Board. In conformity with the administrative procedures act, § 37-13-14.1(a), a DLT — appointed Hearing Officer listened to the case at hand in four separate hearing dates on July 14, 2006; December 15 and 31 2006; and February 16, 2007. The Hearing Officer listened to the testimony of a number of relevant people including Mr. Baldwin, owner and President of Baldwin Farms; Ms. Tirocchi, the Prevailing Wage Division Investigator; three employees who worked on the project for Baldwin Farms; Ms. Sherry Mulhearn, the Executive Director of the RIRRC; and Mr. Brian Stern, former executive counsel for the DOA. All who had knowledge of the project admitted that it involved grading, repair and *Page 4 
alteration. However, they disagreed as to the definition of construction and whether this was a construction project or a maintenance project. Mr. Baldwin and Ms. Mulhearn argued that this project was only a maintenance project (Tr. at 42, 72, 88, Dec. 15, 2006) while Ms. Tirrochi and the former employees stated that this project was a construction project. (See id. at 19-20; Tr. at 57, 60, 65, Jul. 14, 2006.)
The hearing officer, in a written decision on April 20, 2007, found that this was a public works project. He further found that the contract exceeded $1000, this project did involve construction-even if it was labeled a maintenance project, and the Plaintiff was required to pay the prevailing wage even though neither the IFB nor the performance contracts denominated this project as such. (Admin. Decision at 4-5.) Accordingly, the hearing officer ruled that the Plaintiff's employees were entitled to the prevailing wage. In that same written decision, the Hearing Officer also found that the Plaintiff must pay a civil penalty of one time the total amount due pursuant to § 37-13-14.1(b).
The Plaintiff thereafter appealed the decision in accordance with the APA, and the three person appellate board upheld the first decision. The Plaintiff timely made an appeal to this Court pursuant to § 37-13-15(c) and § 42-35-15.
 II Standard of Review
This Court's review of a final agency decision is governed by § 42-35-15(g). The subsection provides as follows:
 The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: *Page 5 
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error or law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.
The Superior Court, when reviewing an administrative decision, is limited to determining whether there is legally competent evidence in the record to support the agency's decision. Town of Burrilville v.Rhode Island State Labor Relations Bd., 921 A.2d 113, 118 (R.I. 2007);Johnston Ambulatory Surgical Associates, Ltd v. Nolan, 755 A.2d 799,804-05 (R.I. 2000). The Court cannot substitute its own judgment for that of the agency in regard to the credibility of the witnesses or the weight of evidence concerning the questions of fact. Ctr. for BehavioralHealth v. Barros, 710 A.2d 680, 684 (R.I. 1998); Kachanis v. Bd. OfReview, Dep't of Employment and Training, 638 A.2d 553, 555 (R.I. 1994). Consequently, this Court "must uphold the agency's conclusions when they are supported by any legally competent evidence in the record."Interstate Navigation Co d/b/a The Block Island Ferry v. Div. of PublicUtilities Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003);Rocha v. State Public Utilities Comm., 694, A.2d 722, 725 (R.I. 1997). This is true, even after reviewing the record and evidence, the court finds that it may have viewed the evidence differently than the agency.Barrington Sch. Comm. v. Rhode Island State Labor Relations Bd.,608 A.2d 1126, 1138 (R.I. 1992). As long as "substantial evidence" supports the agency's decision, the Superior Court must uphold the agency's decision. Barros, 710 A.2d at 684. *Page 6 
The Supreme Court of Rhode Island has defined "substantial evidence" as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Newport Ship Yard v. R.I.Comm'n for Human Rights, 484 A.2d 893, 897 (R.I. 1984) (quotingCaswell v. George Sherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)).
 III Analysis A The Prevailing Wage Law
The Plaintiff argues that the prevailing wage law, G.L. 1956 § 37-13-1et seq., does not include the word "maintenance," and therefore, the DLT interpreted the law to illegally expand its scope to include maintenance projects and found the project falls under the public works statute. The Plaintiff argues that the project was not a public works project. The Plaintiff maintains that the legislature consciously chose to abstain from placing the word "maintenance" into the statute and therefore, the DLT illegally expanded the meaning of the statute to include the word "maintenance." The DLT found that this was a public works job pursuant to § 37-13-1, because the project met the other criteria in the statute other than maintenance.
The statute states in full:
 `Public Works' as used in this chapter shall mean any public work consisting of grading, clearing, demolition, improvement, completion, repair, alteration, or construction of any public road or any bridge, or portion thereof, or any public building, or portion thereof, or any heavy construction, or any public works projects of any nature or kind whatsoever. Sec. 37-13-1 *Page 7 
The DLT relied on the language of the statute and did not consider the word "maintenance" when making its decision. The Court, when reviewing the agency's interpretation of a statute, must give weight and deference to that interpretation provided it is not clearly erroneous or unauthorized. Labor Ready Northeast, Inc. v. McConaghy, 849 A.2d 340,344 (R.I. 2004). The DLT, also relied on the record. It concluded that the project included grading, clearing, improvement, completion, repair, alteration and construction. The DLT relied on the IFB description of what work would be necessary for this contract. This Court, reading the IFB, understands it to state that the work necessary was "sediment pond dredging, removal of sediment from swales and draining benches . . . [r]egrading in areas where old haybales exist prior to installation of new haybales, installation of stone and haybale check dams . . . miscellaneous re-grading of areas for drainage purposes. . . ." (IFB at 2.) Furthermore, the IFB goes on to state that the minimum equipment necessary for the project was "Backhoe, Excavator, Dozer, Loader, Dump truck, Vibratory compactor." (Id. at 3.) The DLT also held a number of hearings at which parties explained the type of work that they did. Randall MacLeod, an operator, explained that "We had to re-design — put in new swales and regrade the road." (Tr. at 55, Jul. 14, 2006.) He stated that the work that he was doing on this project was heavy construction. (Id. at 57.) Accordingly, the DLT had reliable, probative and substantial evidence to find that this was a public works project.
The DLT, relying on the record, also concluded that the RIRRC fell into the category of quasi public agency so that § 37-13-1 applied to this project. The Defendant did not contest that the RIRRC is listed as a quasi public agency. *Page 8 
Section 37-13-7(d) of the Rhode Island General Laws classifies the RIRRC as a quasi public agency, stating in part, "[t]he terms `public agency' and `quasi-public agency' shall include, but not be limited to . . . the Rhode Island resource recovery corporation." Because the RIRRC is considered a quasi public agency, the DLT's reliance on the rest of the language in § 37-13-1 to decide that this project fell under the statute's standard without expanding the statute to include "maintenance" was not an illegal expansion of the statute.[2]See, Pawtucket Power Associates Ltd. Partnership v. City ofPawtucket, 622 A.2d 452, 456 (R.I. 1993) (the court here stated that deference should be given to an agency's interpretation of its statute). Furthermore, the record demonstrates that the former employees of the Plaintiff testified that they did work involving regrading, improvement and restoration. (See Tr. at 55-66, Jul. 14, 2006.) Also, in the IFB itself, the project called for regrading, removal and replacement of haybales and restoration. (IFB at 2.) The Hearing Officer heard competent evidence to conclude that this project fell under the statute since it consisted of regrading, clearing, improvements, and heavy construction. Accordingly, the DLT's finding that this project constituted a public works project subject to the prevailing wage was based on the reliable, probative, and substantial evidence of the record and was not in excess of its statutory authority. *Page 9 
 B Maintenance Work
The Plaintiff also argues that the administrative record reflects that the work performed by Plaintiff constituted maintenance only. The Defendant responds that the record reflects that the work performed constituted construction.
The Plaintiff relies on the testimony of Mr. Baldwin, who testified that he was informed at a pre-bid meeting that this was a maintenance project. (Tr. at 41, Dec. 15, 2006.) The Plaintiff further provided evidence in the form of letters and testimony from representatives of the RIRRC that this was a maintenance project. Because this was a maintenance project, the Plaintiff argues that the DLT could not have concluded that the project fell under the prevailing wage statute.
In the IFB, submitted as an exhibit by both parties, the project itself was titled "Haybale Installation and Erosion Control" (IFB title sheet), and the project was described as erosion control, installation and maintenance. (IFB at 2.) However, at the hearings, a number of people — including the president and owner of Baldwin Farms — testified and conceded that the project did consist of the requirements set out in the IFB. Mr. Baldwin also agreed that this project required the use of a backhoe, bulldozer, small bulldozer, and excavator. (Tr. at 26, Jul. 14, 2006.) When Mr. Baldwin described the installation of the haybales, he described the use of a backhoe to remove the haybale and then to shovel out a new hole to place the new haybales into it. (Id. at 31.) He also explained that the workers used a Euclid, which is an all terrain dump truck used for moving material such as rocks or dirt. (Id. at 34.) The DLT had before it evidence that a construction vehicle was used by the Plaintiff in order to move rocks and dirt as well as *Page 10 
other construction vehicles to create new holes, to conclude that this project was a construction project rather than only a maintenance project. See Pitocco v. Harrington, 707 A.2d 692, 694 (R.I. 1998) (describing heavy construction equipment to include a bulldozer, dump truck and backhoe).
The Plaintiff further argues that the record is clear that this project was a maintenance project only. The Plaintiff, in support of his argument, relies on the testimony of Mr. Baldwin, who testified that after he received notification that a worker had filed a complaint claiming that the workers for Baldwin Farms Inc., were entitled to the prevailing wage law on this project, he sent a letter asking for clarification as to whether his project was entitled to the prevailing wage law. The RIRRC replied that the project was "maintenance only." (Letter to Baldwin Ex. D at 1.) The record also reflects that Ms. Mulhearn, the executive director of the RIRRC testified in one of the hearings that she did not believe that this project consisted of heavy construction. However, she did eventually admit that the activities were construction related activities. (Tr. at 87-88, Dec 15, 2006.) The testimony shows that even a representative of the RIRRC who claims to believe this project was maintenance only was not able to maintain that position.
The record also indicates that the employees of the Plaintiff believed that this project consisted of construction and was not simply maintenance. At the hearing, Randall MacLeod, an operator, testified that he and his fellow workers had to actually raise a road and widen it as well as redesign the entire corner of the road so that the trucks and equipment could properly travel on the road. (Tr. at 56, Jul. 14, 2006.) He also testified that he and the other workers were creating new car paths (trenches to put *Page 11 
the haybales in) where none previously had existed. (Id.) He further added that he had to put in a new roadway for a four-wheeler so that it could get over the ground without further damaging it. (Id. at 58.) Lastly, he classified the work that he and his co-workers did as heavy construction. (Id. at 57.) Mr. Crosby, a laborer, agreed with the testimony of Mr. MacLeod and added that pipes were coming through one of the trails. Consequently, he had to repair that area by re-establishing the slopes, explaining that he had to use the Euclid to move the loam on the top of the slope. He then used other machinery to place the loam to properly re-establish the slope. (Id. at 62-63.) Mr. Young, a laborer and operator, also testified and confirmed what the previous two employees had testified. (Id. at 64-66.) The DLT had before it corroborated testimony of employees demonstrating that the project consisted of more than maintenance and involved heavy construction. The workers were raising roads, digging holes, filling in and moving earth. Furthermore, the Department of Labor and Training's rules give examples of heavy construction including "sewage and solid waste facilities." 16 060 CRIR 011-2.
The hearing officer heard competent evidence to conclude that this project consisted of heavy construction since it involved heavy machinery, raising of roads, and moving earth. Accordingly, there is substantial evidence supporting the DLT's decision that this project involved heavy construction and falls under the public works statute.
 C Notice of Prevailing Wage
Additionally, the Plaintiff argues that the awarding public authority failed to comply with its statutory obligations mandating notice to potential bidders that the *Page 12 
project was subject to prevailing wage requirements. The Defendant argues that the awarding public authority complied with the statute.
The statutes that the Plaintiff relies on are G.L. 1956 §§ 37-13-6 and 7, which provide in part:
 Before awarding any contract for public works to be done, the proper authority shall ascertain from the director of labor and training the general prevailing rate of the regular, holiday, and overtime wages paid and the general prevailing payments on behalf of employees only, to lawful welfare, pensions, vacation, apprentice training and educational funds (payments to the funds must constitute an ordinary business expense deduction for federal income tax purposes by contractors) in the city, town village, or other appropriate political subdivision of the state in which the work is to be performed, for each craft, mechanic, teamster, laborer, or type of worker needed to execute the contract for public works. The proper authority shall, also, specify in the call for bids for the contract and in the contract itself the general prevailing rate of the regular, holiday, and overtime wages paid and the payments on behalf of employees only, to the welfare, pension, vacation, apprentice training and education funds existing in the locality for each craft, mechanic, teamster, laborer, or type worker needed to execute the contract or work. Sec. 37-13-6.
 Every call for bids for every contract in excess of one thousand dollars ($1,000), to which the state of Rhode Island or any political subdivision thereof or any public agency or quasi-public agency is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works of the state of Rhode Island or any political subdivision thereof, or any public agency or quasi-public agency and which requires or involves the employment of employees, shall contain a provision stating the minimum wages to be paid various types of employees which shall be based upon the wages that will be determined by the director of labor and training to be prevailing for the corresponding types of employees employed on projects of a character similar to the contract work in the city, town, village, or other appropriate political subdivision of the state of Rhode Island in which the work is to be performed. Every contract shall contain a stipulation that the contractor or his or her subcontractor shall pay all the employees employed directly upon the site of the work, unconditionally and not less often than once a week, and without subsequent deduction or rebate on any account, the full amounts accrued at time of payment computed at wage rates not less than those stated in the call for bids . . . and that the scale of wages to be paid shall be posted by the contractor in a prominent and easily accessible place at the site of the work. . . . Sec. 37-13-7(a). *Page 13 
The Plaintiff, relying on O'Rourke, Inc. v. Century Electric Co.,1996 WL 937022 (R.I.Super. 1996) argues that there is an implied scienter requirement in the statutes for the bidder. He relies on the dicta in that case suggesting "[u]nder 37-13-6, public authorities must specify the prevailing wage rate in their call for bids. This puts the low bidder on notice as to the prevailing wage rate. When the low bidder pays its employees it knows or should know whether it is violating the prevailing wage law." O'Rourke, Inc., 1996 WL 937022.
Plaintiff's reliance on O'Rourke is misplaced. That case involved a declaratory injunction asking the court to declare G.L. 1956 § 9-1-52
unconstitutional. The Plaintiff in this case does not question the constitutionality of §§ 37-13-6 and 7 but argues the Defendant did not comply with the statutes and provide notice that this was a prevailing wage contract. The definition of scienter is "A degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission; the fact of an act's having been done knowingly, esp. as a ground for civil damages or criminal punishment." Blacks LawDictionary 1373 (8th ed. 2004). The Plaintiff argues that because it was not made aware specifically that this project was a prevailing wage project, the granting party violated the implied scienter within the statute. The Defendant responded that it did not violate the statute because it provided language in the call for bids and the contract requiring the Defendant to comply with the wage laws of Rhode Island.
The DLT found that the IFB and contract's not stating specifically that this was a prevailing wage contract did not violate the statutes. The DLT relied on the language of the IFB and the contract to conclude that the Plaintiff was on notice that he had to comply with the laws of Rhode Island and thus the prevailing wage. (Admin. Decision at 5.) For *Page 14 
Example, the DLT noted that the IFB states, "[e]ach bidder should submit its Bid based upon payment of applicable RI Wage Rates. . . ." (Id. at 13.) The contract between the RIRRC and the Plaintiff states, "the Contractor agrees to perform all services and provide all goods called for by this Agreement in compliance with all Rhode Island laws." (Id. at 3.) The DLT concluded that that language, in conjunction with the actual work involved, was sufficient to put the Plaintiff on notice that he was subject to the prevailing wage.
This Court notes that the language of the statute states: "The proper authority shall, also, specify in the call for bids for the contract and in the contract itself the general prevailing rate of the regular, holiday, and overtime wages paid. . . ." Sec. 37-13-6. "[D]eference will be accorded to an administrative agency when it interprets a statute whose administration and enforcement have been entrusted to the agency."Pawtucket Power, 622 A.2d 452, 456. This Court finds that the call for bids and the contract provided language pertaining to the wage the bidder would have to pay to its workers. Section 37-13-7(a) goes on to state that in a contract that is over $1000 and contains public works aspects, that contract "shall contain a provision stating the minimum wages to be paid various types of employees which shall be based upon the wages that will be determined by the director of labor and training. . . ." Sec. 37-13-7(a). This language does not specify that the contract must specifically state the project is a prevailing wage project. It states that the contract must state the minimum wages. Furthermore, the Department of Labor and Training's Rules regarding prevailing wages states: "Any contractor who has been awarded a contract for a Public Works Project in excess of $1,000.00 . . . shall be liable for the payment of prevailing wages under this chapter regardless of whether or not the prevailing wages were listed in the contract. . . ." 16 *Page 15 
060 CRIR 011-1. Accordingly, this Court finds the DLT had substantial evidence before it to determine that the Defendants complied with the statute.
Plaintiff further argued that he attempted to discern what `applicable RI Wages' meant and was told that prevailing wages did not apply. Mr. Baldwin testified that he contacted the RIRRC and also asked at the pre-bid meeting with a member of the RIRRC whether he was subject to the prevailing wage. He testified he was instructed that this project was maintenance only and it was not subject to the prevailing wage. (Tr. at 42-43, Jul. 14, 2006; Tr. at 39-42, Dec 15, 2006.)
The record shows that after Mr. Baldwin was informed of the prevailing wage complaint, he again contacted the RIRRC to ask if this project was subject to the prevailing wage. The RIRRC answered Plaintiff's request in a letter, dated June 7, 2005, from a Mr. William Anderson, concluding that the project was maintenance only and he need not worry about the prevailing wage rate. (Letter to Baldwin Ex. D at 1.) However, this letter is essentially identical to that of an internal memo written by a law student not authorized to practice law. The internal memo was addressed to Mr. Stern, who, at the time, was the Executive Counsel to the Department of Administration. Mr. Stern admitted in his testimony that "the legal opinions in the attached memorandum are incomplete." (Tr. at 8, Feb. 16, 2007.) Thus, the record shows that the Plaintiff relied on improper information.
The State of Rhode Island has a statute that grants the director of the Department of Labor and Training the power to determine whether a project is subject to the prevailing wage. G.L. 1956 § 37-13-8. The language of that statute states: "The director of labor and training shall investigate and determine the prevailing wages and payments *Page 16 
made to or on behalf of employees, as set forth in § 37-13-7." Section 37-13-7 states in part "minimum wages to be paid various types of employees which shall be based upon the wages that will be determined by the director of labor and training. . . ." These statutes make clear that the director of Labor and Training is the only person who can determine if a project is subject to the prevailing wage. Although Baldwin Farms claims it tried to ascertain whether its project fell under the prevailing wage statute, it was asking the wrong authority to obtain that information. The DLT concluded the State cannot be bound by the advice that the members of the RIRRC, a quasi public agency, gave to the Plaintiff because they did not have the authority to make that decision. (Admin Decision at 5.) See, Sch. Comm. of Providence v. Boardof Regents for Ed., 429 A.2d 1297, 1302 (R.I. 1981); Potter v.Crawford, 797 A.2d 489, 492-493 (R.I. 2002); Casa DiMario, Inc. v.Richardson, 763 A.2d 607, 610 (R.I. 2000) (all three stating that a public agent must have actual authority to bind a municipality). This Court agrees with the finding of the DLT that the director of the DLT cannot be bound by advice of members of the RIRRC.
The Plaintiff continues that a good faith effort was made to determine whether it owed the prevailing wage. However, that good faith has no bearing on the prevailing wage statutes. The only time good faith comes into play is after the hearing officer determined that the Plaintiff owed a prevailing wage. See § 37-13-14.1. Once it is determined that the Plaintiff has violated the prevailing wage, a civil penalty must be assessed under § 37-13-14.1(b). However, the Plaintiff did not contest the civil penalty imposed and this Court will not address the penalty. At issue here is whether the Plaintiff obtained the information from the correct authority. The Plaintiff failed to inquire of the proper authority and as a result, the erroneous advice by the RIRRC is not binding on the *Page 17 
DLT. See, Sch. Comm. of Providence, 429 A.2d 1297. This Court finds that the DLT's decision finding that the Defendants complied with the statutory framework of providing information as to the wage that would apply, is not affected by error of law.
 IV Other Arguments
The Plaintiff raises numerous arguments generally in his complaint on appeal to this Court. Generally, the Plaintiff states in his complaint that the hearing officer was not an impartial person to hear the issue because he was legal counsel to the Department of Labor and Training; the hearing officer lacked jurisdiction to hear the dispute between the parties, and the awarding authority pursuant to § 37-13-1 et.seq., specifically § 37-13-6, did not ascertain the prevailing rate of wages before awarding any contract for the project in question. Additionally, the Plaintiff generally avers that the awarding authority did not ascertain from the Department of Labor and Training the general prevailing rate; "the prevailing rate wage pursuant to R.I.G.L. § 37-13-11 was not complied by the Defendant and that no posters were determined by the Defendant nor were any said posters delivered to the awarding authority," and "the Respondents have discriminated against the Plaintiff in that other projects which requires prevailing wages were not enforced."
"Simply stating an issue for appellate review, without meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." Wilkinson v. State Crime LaboratoryCommission, 788 A.2d 1129, 1132 n. 1 (R.I. 2002) (citing O'Rourke v.Industrial National Bank of R.I., 478 A.2d 195, 198 n. 4 (R.I. 1984);Mercurio v. *Page 18 Fascitelli, 116 R.I. 237, 354 A.2d 736 (1976)). Here, the Plaintiff has provided little, if any, meaningful argument in support of the above issues. Accordingly, in the absence of either "a meaningful discussion thereof or legal briefing of the issues," this Court will not address the remaining issues as it deems them waived. See id., n. 1 at 1132.
For purposes of discussion only, the Court will address the argument that the hearing officer lacked jurisdiction to hear the suit and that he was not impartial. The hearing officer was designated by the director of labor and training to hear this dispute. (State's Ex. 1.) According to § 37-13-14.1(a) "The hearing shall be conducted by the director of labor and training or his or her designee. The hearing officer in the hearing shall be deemed to be acting in a judicial capacity. . . ." The statute is clear in its language that the director of labor and training can appoint a designee to hear the matter. The Director appointed a member of the DLT's legal counsel, thus, someone who could understand the law, to be the hearing officer. As an attorney presiding over a manner in a judicial capacity, the hearing officer ethically had to be impartial and this Court finds that he acted in an impartial manner. Accordingly, the decision was not made upon unlawful procedure.
 V Conclusion
After a review of the entire record, this Court finds that the DLT's decision that the Plaintiff owes the prevailing wage to his workers is supported by reliable, probative and substantial evidence in the record, is not in excess of the authority granted to it by the statute, and is not affected by error of law. The Plaintiff's rights have not been *Page 19 
substantially prejudiced. Accordingly, the decision of the DLT is affirmed. Counsel shall submit the appropriate judgment for entry.
[1] In support of his appeal, the Plaintiff titled his memorandum a motion to vacate judgment. However, the within is an administrative appeal. Pursuant to Sarni v. Meloccaro, 113 R.I. 630, 636, 324 A.2d 648,651 (R.I. 1974) this Court "look[s] to substance not labels." Accordingly, this Court will treat the motion to vacate as an administrative remedy elected by the Plaintiff in its invocation § 42-35-15.
[2] The Plaintiff also argues that the DLT illegally added maintenance contracts to its rules and regulations to be subject to the prevailing wage. Because this Court finds that the DLT made its decision that this project fell under the public works statute and thus the prevailing wage, without including the word "maintenance," this Court will not consider this argument.